**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**John Quincy ADAMS, Respondent.**

No. OBAD 1159.
SCBD 4058.

Supreme Court of Oklahoma.

Feb. 28, 1995.

Rehearing Denied May 1, 1995.

---

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Association, Oklahoma City, for complainant.

John Q. Adams, respondent, pro se.

## OPINION

WATT, Justice.

On June 2, 1994, the Oklahoma Bar Association ("OBA") filed a complaint alleging that Respondent, John Q. Adams, violated Rules 1.3 and 1.4 of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S.1991, Ch. 1, App. 3–A, during the course of his representation of William and Debbie Brocker. The Bar alleged Adams violated Rule 5.2 of Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.1991, Ch. 1, App. 1–A, by failing to respond to the grievance sent by the Bar. In the complaint it was also alleged that Adams was personally incapable of practicing law. This proceeding was brought pursuant to Rules 6 and 10 of the RGDP.

A hearing was conducted before a Trial Panel of the Professional Responsibility Tribunal ("PRT") on July 27, 1994, at which time statements of counsel were considered, exhibits were introduced, and witnesses testified. Counsel for the Bar advised the Trial Panel that Adams had previously been privately reprimanded by this Court and that there were five pending grievances against him being investigated by the Bar. The Trial Panel then filed their findings of fact, conclusions of law and recommendation of discipline. The Trial Panel concluded that the Rules of Professional Conduct and Disciplinary Proceedings had been violated and that Adams was personally incapable of practicing law as defined in Rule 10.1(a), (b), and (c) of the RGDP. The Trial Panel recommended that Adams' license to practice law be suspended until further notice of this Court. The Bar also asked that the costs of the proceeding be assessed against Adams in the amount of $1,532.01.

This Court issued a briefing schedule requiring Adams to file his response to the Bar's brief by October 4, 1994. Adams failed to file a response brief or an application for an extension of time. The Bar has asked this Court to rule in this matter on the record presented to the Court which includes the Complaint, transcript of the hearing, Trial Panel's Report and the Bar's Brief. This we agree to do.

■ The degree of discipline this Court imposes upon an attorney for misconduct is based on the particular facts and circumstances of the case. We do not function in disciplinary proceedings as a reviewing tribunal, but rather as a licensing court acting in the exercise of our exclusive original jurisdiction. *In re Integration of State Bar of Oklahoma*, 185 Okla. 505, 95 P.2d 113, 114 (1939). Our responsibility is to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline. *State ex rel. Okla. Bar Ass'n. v. Donnelly*, 848 P.2d 543 (Okla.1992). The record in this action is sufficient for our de novo consideration. The Court's responsibility in a disciplinary proceeding is not to punish but to inquire into the lawyers' continued fitness, with a view toward safeguarding the interest of the public, the courts and the legal profession. *State ex rel. Okla. Bar Ass'n. v. Moss*, 682 P.2d 205, 207 (Okla.1983).

### FACTS IN SUPPORT OF RULE 1.3 AND 1.4 VIOLATIONS

The Brockers purchased a mobile home on August 24, 1988, from Harvey L. Lakey. Shortly after moving in, the Brockers learned that the home had no septic tank and raw sewage was being dumped on the ground underneath the trailer. The Brockers retained Adams to sue Mr. Lakey but despite repeated assurances by Adams, he never filed suit. Thereafter, Mr. Brocker became disabled and also became delinquent in his payments on the contract for deed with Lackey. Lackey sued the Brockers on October 5, 1990, to foreclose on the mobile home.

Adams filed an Entry of Appearance, Answer and Cross–Petition on behalf of the Brockers. Adams never prosecuted the Cross–Petition. On March 18, 1992, Lackey's attorney filed a Motion for Summary Judgment with the hearing set for April 8, 1992 [1]. Adams never filed a response to the Motion for Summary Judgment. Adams attended the hearing on April 8th, where the court entered judgment against the Brockers for $10,124.58 principal, plus interest and attorney's fees and for foreclosure of the mobile home. Adams approved and signed the Journal Entry of Judgment. The Brockers were subsequently evicted from the mobile home.

It is disputed whether the Brockers received a copy of the Journal Entry of Judgment from Adams' office. When the Brockers discovered judgment had been taken against them and that the mobile home was to be sold, they went to see Adams. Adams told them they still had a viable claim on the Cross–Petition. After that meeting, the Brockers contacted another attorney and fired Adams. The Brockers were advised by the other attorney that the Cross–Petition could not be litigated because Lackey, the only named defendant, had died, his will had been probated and his estate closed.

■ We find Adams' conduct in failing to prosecute the Cross–Petition and failing to file a response to the Motion for Summary Judgment violates the mandatory provisions of Rule 1.3 of the ORPC. This rule requires reasonable diligence and promptness by an attorney in representing a client. Further, Adams violated the requirement of Rule 1.4 of the ORPC by failing to keep his clients informed of the status of their case. Adams'

1. The record reflects that on February 21, 1992, Adams sent a letter to the Brockers telling them their case was set for jury trial on March 13, 1992. It is unclear what "trial" Adams is describing, as the Motion for Summary Judgment was filed on March 18, 1992, with the hearing set for April 8, 1992. Mr. Brocker testified he believed the letter was referring to the hearing on the Motion for Summary Judgment. The Brockers met with Adams after they received the letter and were told to meet Adams at his office on the morning of the hearing to accompany him to court. When the Brockers arrived, however, Adams was not at his office, nor did he come in during the time the Brockers waited.

conduct constitutes grounds for professional discipline.

## FACTS IN SUPPORT OF RULE 5.2 VIOLATION

■ Upon the filing of the grievance by Mr. Brocker, the General Counsel for the Bar sent a letter to Adams enclosing a copy of the grievance and informing Adams of his duty under the RGDP to respond within 20 days. Adams did not respond. The General Counsel wrote a second letter advising Adams that if he did not respond a subpoena would be issued requiring his testimony concerning the matter. No response was received and, as a result, a subpoena duces tecum was served. On the day of the scheduled deposition, Adams faxed a letter stating he was sick with the flu and couldn't attend. The General Counsel's office sent a letter offering to reschedule the deposition and requesting that Adams contact the General Counsel's office to make arrangements. Adams did not contact the General Counsel's office. In all, three subpoenas were issued and served on Adams. He did not appear at any of the scheduled depositions.

On the day of the second deposition, Adams called to say that the weather was bad and that he was turning around to go home. The Bar agrees that the weather was bad and getting worse at that time. On the day of the third scheduled deposition, the Bar received a faxed letter from Dr. J. Earle White in Fort Smith, Arkansas. The doctor informed the Bar that Adams had been admitted to the hospital for an illness which would require four to five weeks treatment and recuperation. Adams checked himself out of the hospital three days later, but did not contact the Bar.

While one or two of his absences may be excusable, Adams' failure to contact the Bar or make any efforts whatsoever to reschedule the depositions shows his total indifference towards this matter. Rule 5.2 of the RGDP states that "[t]he failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline."

## RULE 10 PROCEEDINGS BEFORE THE SUPREME COURT

Rule 10.1 of the RGDP states that the term "personally incapable of practicing law" shall include:

(a) Suffering from mental or physical illness of such character as to render the person afflicted incapable of managing himself, his affairs or the affairs of others with the integrity and competence requisite for the proper practice of law;

(b) Active misfeasance or repeated neglect of duty in respect to the affairs of a client, whether in matters pending before a tribunal or in other matters constituting the practice of law; or

(c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.

■ If the Court finds the respondent personally incapable of practicing law, he shall be formally suspended from the practice of law until the further order of the Court. Rule 10.10 of the RGDP. Rule 10 proceedings are kept confidential and do not become a matter of public record except where disciplinary proceedings are involved (Rule 6) or otherwise ordered by the Court. Rule 10.12 of the RGDP.

■ In a Rule 10 proceeding the main objective is to minimize the potential risk to the public from a practitioner's incapacity. The focus is not exclusively on the past but rather on the practitioner's present condition and its future consequences. This does not mean that the disability may be used as a shield from professional responsibility. Where the facts warrant, discipline could still be imposed. *State ex rel. Okla. Bar Ass'n. v. Donnelly*, 848 P.2d 543, 547 (Okla.1992).

■ Adams testified that he has been a recovering alcoholic for 23 years and has been a long-time member of Alcoholics Anon-

ymous. He admitted drinking alcohol on May 24, 1994, the day he was admitted to the hospital with a blood alcohol level of .222, but denies any other occurrences of non-sobriety. Adams also denies that he was intoxicated on that day and stated he "had no difficulty in driving from Sallisaw to Fort Smith". Dr. J. Earle White testified that Adams was admitted to the hospital in Fort Smith, Arkansas on that day for chronic alcohol intoxication with beginning memory deficits and non-insulin dependent diabetes mellitus. Adams checked himself out of the hospital, over the doctor's objections, after three days.

Judge A.J. Henshaw, who has known Adams for many years, was very complimentary of Adams' abilities as a lawyer, for his pro bono legal service to the community, as an AA counselor and role model, up until his release from the hospital in 1993.[2] Judge Henshaw testified that since his first hospitalization "he's not the same John Q. Adams that has been such a excellent attorney here in Sequoyah County." He stated Adams' behavior has been erratic and questionable since that time. Judge Henshaw testified Adams has continuously failed to appear for court hearings, failed to file pleadings timely, and has been unprepared in handling matters before the district court. The Judge noted Adams has exhibited disregard for his personal appearance and hygiene. The Judge also once detected the odor of alcohol on Adams' breath. When asked if he thought Adams was able to represent his clients competently, as defined by the Rules of Professional Conduct, Judge Henshaw responded "unequivocally no" based on Adams' present condition. Judge Henshaw offered his personal opinion that the changes in Adams' behavior were attributable to alcohol use rather than to any physical ailments.

The only witnesses who testified as to Adams' physical or mental health, his daily routine, his sobriety, or his capability as an attorney were Adams and his wife.

We conclude the evidence presented supports a finding that Adams is "personally incapable of practicing law" as defined by Rule 10.1.

### RULE 6 DISCIPLINARY PROCEEDING

 In a Rule 6 proceeding, the Court focuses on the lawyer's questionable past conduct. This is necessary to safeguard public interest and to protect the judicial system. A Rule 6 proceeding is also designed to deter the respondent from further offending behavior and other members of the Bar from like derelictions. *State ex rel. Okla. Bar Ass'n. v. Arnett*, 815 P.2d 170, 171 (Okla.1991). However, a lawyer's professional misconduct and any personal incapacity that may have impeded a practitioner from performing at a minimum acceptable level are of equal importance in exploring for a solution that accords with the law's imperative of ensuring protection to the public from deficient lawyers. *Donnelly*, 848 P.2d at 546.

 Public confidence in the practitioner is essential to the proper functioning of the profession. *State ex rel. Okla. Bar Ass'n. v. Evans*, 880 P.2d 333, 339 (Okla.1994). Every licensed lawyer is presented to the public as a person worthy of confidence in the performance of all professional activities. If a lawyer should become unfit, it is our duty to withdraw the endorsement for the immediate protection of the public. *State, ex rel. Okla. Bar Ass'n. v. Raskin*, 642 P.2d 262 (Okla. 1982).

### ENHANCEMENT OF DISCIPLINE

Adams was privately reprimanded by this Court on April 5, 1993, for failing to file Petitions in Error after filing Notices of Intent to Appeal and designating the records in several criminal cases. Judge Henshaw testified that in October of 1993, Adams secured a release on an appeal bond for a defendant in a criminal case pending before the judge, but that Adams failed to file the appeal.

Adams has five pending grievances being investigated by the Bar. He has not responded to any of the grievances, violating Rule 5.2 of the RGDP.

### APPROPRIATE DISCIPLINE

 This matter was brought before the Court under Rule 10. It was confidential

---

2. Adams had been hospitalized for a month with acute anemia.

and not of public record. The allegations of violations of the Rules of Professional Conduct and the Rules Governing Disciplinary Procedure were proven at the hearing. The allegations of personal incapacity were proven at the hearing. It is for this Court to determine what course to take in matters of this nature. Rule 10 proceedings and their subsequent suspensions are confidential out of respect and as a courtesy to the attorney who is incapacitated. It must then be decided at what point the public is to be made aware of such incapacity.

In *State ex rel. Okla. Bar Ass'n. v. Carpenter*, 863 P.2d 1123, 1130 (Okla., 1993), the Court held that although alcoholism is not in itself enough to mitigate discipline, the fact that the attorney recognized his problem, sought and cooperated in treatment, and was willing to undergo supervision convinced the Court that severe discipline need not be imposed. Carpenter was suspended for six months which was to be followed by a two and one-half year supervised probation.

Adams denies his drinking problem, testified that he acts as an AA counselor and that he has contacted a representative from the Lawyers Helping Lawyers program and offered his services as a counselor.

Adams is 75 years old and has had a long and distinguished legal career. He was a District Judge for 16 years in the 12th District. He was also a District Attorney in Mayes and Sequoyah Counties. However, Adams' conduct is not acceptable nor can it be ignored. Private reprimands are not given lightly nor should they be taken lightly. Based upon his conduct, previous discipline and the pending grievances we impose suspension of Adams' license to practice law for two years and one day.

Costs of this disciplinary proceeding in the amount of $1,532.01, shall be assessed against Adams to be paid within thirty days of the date of promulgation of this opinion.

HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.

LAVENDER, J., with whom ALMA WILSON, C.J., KAUGER, V.C.J. and SUMMERS, J., join, dissenting: I would

treat the matter as a Rule 10 proceeding and would accept the recommendation of the PRT to suspend the Respondent from the practice of law until further order of the Court.