2005 OK 91

STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

David Mitchell GARRETT, Respondent.

No. SCBD 5029.

Supreme Court of Oklahoma.

Dec. 13, 2005.

As Corrected Dec. 13, 2005.

Loraine Dillinder Farabow, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for Complainant.

Gary a. Rife, Rife & Walters, Oklahoma City, for Respondent.

## OPINION

WATT, Chief Justice.

¶ 1 The Complainant, Oklahoma Bar Association (the Bar), filed a complaint against Garrett, Respondent, a licensed attorney in Oklahoma, pursuant to Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. The Bar alleged the sexual assault of two women (Counts I and II); his arrest for two counts of felonious sexual battery and later conviction of two counts of misdemeanor battery (Count III); and his alcohol abuse and addiction (Count IV).[1] The Bar alleged Garrett's misconduct violated Rule 8.4(a) and (b)[2], Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001,

---

1. We find that the provisions of Rule 10, RGDP, are not applicable in this proceeding, despite Garrett's admission of his chronic alcoholism. No evidence was presented by either party of Garrett's incapacity to practice law while under the influence of alcohol.

2. Rule 8.4(a) and (b), ORPC, provides:
   It is professional misconduct for a lawyer to:

   (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the act of another;

   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . .

Ch. 1, App. 3–A, and Rule 1.3 [3] of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A, and warranted professional discipline. The parties stipulated to violations of these rules.[4] The parties also stipulated as to the appropriate discipline to impose which includes a public censure, probation for one year subject to specific conditions,[5] and the payment of costs of these proceedings. The Trial Panel Report notes these stipulations and recommends the same discipline.

### CASE OF FIRST IMPRESSION

¶ 2 This Court has previously considered appropriate discipline for attorneys' sexual misconduct with their clients. See *State ex rel. Oklahoma Bar Association v. Anderson,* 2005 OK 9, 109 P.3d 326; *State ex rel. Oklahoma Bar Association v. Sopher,* 1993 OK 55, 852 P.2d 707. We have also disciplined attorneys whose addiction to alcohol or drugs has caused serious problems in the attorney-client relationship. See *State ex rel. Oklahoma Bar Association v. Donnelly;* 1992 OK 164, 848 P.2d 543; *State ex rel Oklahoma Bar Association v. Arnett,* 1991 OK 44, 815 P.2d 170. Today, for the first time, this Court considers appropriate discipline for an attorney whose alcohol addiction led to his arrest for felonious sexual battery and his convic-

tions for misdemeanor battery of two women *outside* the attorney-client relationship.

### JURISDICTION AND STANDARD OF REVIEW

■ ¶ 3 In disciplinary proceedings this Court acts as a licensing court in the exercise of our exclusive original jurisdiction. *Anderson,* 2005 OK 9, 109 P.3d 326; *State ex rel. Oklahoma Bar Association v. Taylor,* 2003 OK 56, 71 P.3d 18. We have a constitutional, nondelegable responsibility to decide whether misconduct has occurred and what discipline is appropriate. *Anderson,* 2005 OK 9, ¶ 15, 109 P.3d 326, 330. We exercise this responsibility, not for the purpose of punishing an attorney, but to assess his or her continued fitness to practice law, *Taylor,* 2003 OK 56, ¶ 22, 71 P.3d 18, 29; and to safeguard the interests of the public, the courts and the legal profession. *Id.; State of Oklahoma, ex rel. Oklahoma Bar Association v. Wagener,* 2005 OK 3, 107 P.3d 567; *State ex rel. Oklahoma Bar Association v. Southern,* 2000 OK 88, 15 P.3d 1.

■ ¶ 4 We have a responsibility to ensure the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline. *State of Oklahoma ex rel. Oklahoma Bar Association v. Adams,* 1995 OK 17, 895 P.2d 701. We find the

---

3. Rule 1.3, RGDP, provides:
   The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of the professional capacity, or otherwise, which would reasonably be found to bring discredit upon the legal profession shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

4. The Joint Stipulations also provide, in part:
   a. The parties stipulate to the allegations in the formal complaint "as fact".
   b. Because of his intoxicated state in both assaults, he had no independent recollection of assaulting either victim. However, he does not dispute the truthfulness of their testimony in the preliminary hearing and accepts full responsibility for his actions and misconduct.
   c. Garrett has complied with the terms and conditions of his probation in both cases and if successful, was to be released from probation on June 8, 2005.

5. The parties stipulated as to the following conditions for his one-year probation:
   A. That Respondent is to refrain from drinking alcohol or using any drugs or medication(s) unless prescribed by his medical physician;
   B. That Respondent is to not violate any law nor any of the terms or conditions of his probation as ordered by the Muskogee District Court in case nos. CF–2003–432 and CF–2003–433;
   C. That Respondent is to continue his active involvement and participation with the LHL [Lawyers Helping Lawyers] Program;
   D. That Respondent is to continue his active and regular attendance and participation in AA [Alcoholics Anonymous];
   E. That Respondent is not to violate any terms of the ORPC or RGDP;
   F. That Respondent be ordered to complete or comply with any other conditions the Oklahoma Supreme Court may deem necessary or in the public's best interests.

record submitted in this proceeding is sufficient for our *de novo* review.

## THE COMPLAINT

¶ 5 The first two counts of the Bar's complaint describe the accusations of sexual assault against Garrett by two women, J.L. and T.C.,[6] on April 23, 2003, and May 23, 2003, respectively.[7] Count III describes Garrett's arrest and his criminal prosecution and convictions. On June 6, 2003, Garrett was arrested at his law office. He was charged with two counts of Felonious Sexual Battery, in violation of 21 O.S. Supp.2002 § 1123(B). A preliminary hearing was held and Garrett was bound over for jury trial in both cases. The State filed a notice of intent to use evidence of other crimes in the form of testimony of other women who had previously made allegations of sexual battery against Garrett.

¶ 6 Garrett's two felony sexual battery charges were reduced to misdemeanor battery charges, to which Garrett pled guilty. He received one-year suspended sentences on each count to run concurrently, in addition to terms requiring Garrett to pay costs and to continue alcohol treatment while on probation. The jury trials were set for June 8, 2004.[8]

¶ 7 Count IV addresses Garrett's chronic alcoholism from which he had been suffering for a considerable period of time before these incidents arose. Garrett's written response to the complaint is quoted. It indicates he remembers drinking heavily on both occasions, but he did not remember the incidents with the two women which are the basis of the complaint. Count IV also recites that following his arrest, Garrett realized alcohol was a problem in his life. He contacted the Bar's Lawyers Helping Lawyers (LHL) program. On June 10, 2003, Garrett entered an inpatient treatment facility where he remained for 72 days until his discharge on August 20, 2003.[9] After his discharge, he moved to Tulsa to practice law.

¶ 8 In its report, the Trial Panel made Findings of Fact which it concluded were established by clear and convincing evidence.[10] Our review of the record is *de novo*

6. Only the initials of the complaining witnesses will be used in this opinion to respect their privacy.

7. Count I: The [J.L.] Assault
   The first assault occurred on April 23, 2003, at a sports bar in Muskogee, Oklahoma. Garrett motioned to a 21–year old woman, J.L., to come to his table. When she reached his table, he placed his arm around her back, asked her name and indicated he knew the woman's parents. Count I of the Complaint further provides:
   10. Respondent then moved his hand down and began rubbing [J.L.]'s buttocks and commented that [J.L.] had grown up to be "a nice looking young lady."
   11. Respondent then reached with his other hand and grabbed [J.L.]'s breast and twisted her nipple.
   12. [J.L.] stepped away from Respondent and said she had to go take care of a friend.
   13. Respondent continued to make suggestive comments to [J.L.] as she attempted to leave his presence.
   . . .
   15. On the morning of April 24, 2003, [J.L.] went to the Muskogee Police Department and reported that she had been sexually assaulted by Respondent the previous evening.
   Count II: The [T.C.] Assault
   The second assault occurred the evening of May 23, 2003, in Muskogee as T.C. was leaving a restaurant where she worked. She stopped in the foyer to talk on her cell phone. Garrett opened the door to the foyer, walked over to her, pulled her towards him and grabbed her right breast. She pushed him away and went inside the restaurant to advise her employer, the owner of the restaurant, about the incident. The owner asked Garrett to leave. He asked a staff member to call a cab for him because he appeared too drunk to drive. After T.C. left the restaurant, she went to the Muskogee Police Department and reported Garrett had sexually assaulted her.

8. The complaint also provides that just prior to the day of the criminal trials, Garrett settled two civil lawsuits, one which had been filed and another which would have been filed, with T.C. and J.L. The terms of the settlement provided the prosecuting attorney would be informed of the settlement. Each woman received $50,000.00 and agreed to testify at the trial on the reduced charge of misdemeanor battery. The parties signed agreements to keep the terms of the settlements, filed under seal, confidential.

9. Garrett testified he entered the Betty Ford Center (BFC) in California.

10. The Trial Panel made the following Findings of Fact:
    1. During the two years since Garrett's misconduct, he has been fully cooperative with the

in which we conduct a non-deferential, full-scale examination of all relevant facts; the recommendations of the trial panel are neither binding nor persuasive. *Anderson,* 2005 OK 9, ¶ 15, 109 P.3d 326, 330; *State ex rel. Oklahoma Bar Association v. Groshon,* 2003 OK 112, ¶ 5, 82 P.3d 99, 103. We consider all of the evidence without deference to the parties' stipulations to determine if allegations of misconduct are established by clear and convincing evidence. *Taylor,* 2003 OK 56, ¶ 2, 71 P.3d 18, 21; Rule 6.12(c), RGDP, 5 O.S. 2001, Ch.1, App. 1–A.[11]

### GARRETT'S PREVIOUS CONDUCT; VIOLATIONS OF RULE 8.4, ORPC, AND RULE 1.3, RGDP

¶ 9 Incidents of prior misconduct have been considered for determining appropriate discipline and whether a lawyer's conviction and underlying conduct reflect adversely on his ability to practice law. See *Arnett,* 815 P.2d at 171. "A pattern of repeated offenses,

OBA, did not contest and in fact, stipulated to each of the OBA's allegations in the Complaint, took full responsibility for his actions, did not blame others, acknowledged harm to his victims and legal profession, has done everything asked of him by the OBA, the District Court, his inpatient facility, and Lawyers Helping Lawyers;
2. Garrett's misconduct was the result of his alcoholism, a treatable illness;
3. Garrett's subsequent, appropriate behavior convinced the Trial Panel that he now behaves differently;
4. Garrett fully cooperated in his recovery from alcoholism and is committed to continuing his recovery for his lifetime;
5. Garrett is committed to participating in Alcoholics Anonymous and Lawyers Helping Lawyers, and anything necessary to help him stay in recovery from alcoholism;
6. The Trial Panel was impressed with the sincerity of Garrett's testimony that he feels genuine remorse over his misconduct which he admits brought disrepute to himself and to the legal profession;
7. Garrett is competent to practice law;
8. Petitioner (sic) is no longer a risk to the public and will continue to be so long as he remains in recovery. [T]he Trial Panel finds Complainant OBA has established the facts supporting the charges against Garrett by clear and convincing evidence;
9. Garrett's misconduct was not related to practice of law;
10. Garrett's misconduct was not within the attorney-client relationship;

even ones of minor significance when considered separately, can indicate indifference to legal obligation." See Comment to Rule 8.4, ORPC, 5 O.S.2001, Ch. 1, App. 3–A.

¶ 10 Allegations by three other women of previous incidents of sexual misconduct are noted in the Bar's complaint. These incidents are alleged to have occurred between 1994 and 2003 but never became the subject of criminal charges or of Bar disciplinary proceedings. Moreover, we underscore that the discipline imposed in this proceeding does not include these prior instances.[12] However, under our *de novo* review, we note them because Garrett's alcohol addiction is also blamed for the prior sexual assault allegations.[13] Further, Garrett testified the 1994 incident also ended in an out of court settlement in a civil case.

¶ 11 In addition to allegations of prior sexual batteries, Garrett admitted he had been charged with previous alcohol-related traffic

10. (sic) Garrett fully cooperated with the District Court and the OBA, did not contest allegations of complaint.

11. Rule 6.12(c), RGDP, provides:

(c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings.

12. Rule 1.7, RGDP, provides in part:

[I]n fashioning the degree of discipline to be imposed for misconduct, the Professional Responsibility Tribunal and the Court shall consider prior misconduct where the facts charged in the complaint and proved and the accused has been afforded an opportunity to rebut such charges.

13. Garrett took issue with statements in the Bar's Brief in Chief characterizing his misconduct in terms of violence and sexual assaults. He contends the evidence showed that his misconduct was related to alcohol abuse, rather than sexual deviancy. The evidence shows alcoholism had the greatest influence in leading to Garrett's misconduct. While the felonies were reduced to misdemeanor battery charges, his actions constituted serious criminal offenses. The plea agreement and reduction of charges do not diminish the severity of the acts themselves. However, the Bar has reiterated its position that Garrett's misconduct stems from abuse of alcohol, not sexual misconduct.

violations.[14]  Nevertheless, he did not stop drinking until criminal charges were filed against him, placing him in jeopardy of losing his license to practice law.

¶ 12 Garrett testified he reached "bottom," as it is referred to in AA, and realized when criminal charges were filed that alcohol controlled his life.  He testified he does not know why the prior incidents were not enough to persuade him to make changes in his life.  Although he stated he did not previously think he was an alcoholic, he now admits he is powerless against alcohol.  He testified he appreciates the two women who brought the charges against him because it gave him a chance "to live a new life."  We must decide whether his arrests and convictions involving J.L. and T.C. are merely part of an ongoing pattern showing an "indifference to legal obligation," or whether his recent efforts to maintain sobriety show a sincere desire to take responsibility for his alcoholism, causing this pattern to cease.

■ ¶ 13 Under the evidence presented, we find Garrett has finally taken steps to take responsibility for his prior behavior and intends to work to maintain his sobriety through his involvement with LHL and AA.  This represents a departure from his previous behavior.  We agree with the Bar's contention that Garrett's disregard for the persons of J.L. and T.C., his criminal conduct

and criminal convictions are clear and convincing violations of ORPC Rule 8.4(a) and (b).  These actions, in addition to Garrett's abuse of alcohol, also violated RGDP Rule 1.3, by the discredit he has brought upon the legal profession.  In addition to protecting the public, we must impose discipline which will instill the public's confidence in the Bar and the legal profession in Oklahoma.

## MITIGATION[15]

¶ 14 Garrett testified his sobriety began on June 7, 2003, one day after his arrest.  On that day, he contacted attorney Glenn Mirando, the Director of LHL.  In addition, he contacted the BFC to seek admission for alcohol abuse treatment.  He attends four to five AA meetings per week, has a sponsor and is working the "twelve-step program" which involves the acceptance of a higher power for help.  He also testified he is committed to remaining sober and to helping other alcoholics.  He testified he is under the influence of no drug or alcohol and believes he is competent to practice law.  He attends no counseling except AA and LHL.  He also receives regular calls from BFC which follows the progress of its former patients for years after treatment.  When asked about BFC's recommendation of "weekly psycho-

14.  He testified he was stopped for alcohol-related offenses but never received a conviction for DUI.

15.  The parties' stipulations regarding mitigation are summarized below:

a.  Respondent had never before been disciplined for professional misconduct.

b.  Respondent has been cooperative throughout the investigative and disciplinary proceedings.

c.  He has accepted responsibility for his behavior by entering guilty pleas in the criminal proceedings to reduced misdemeanor charges, by settling two related civil suits, and by entering into these stipulations.

d.  He recognizes his actions have brought discredit to the legal profession and has expressed sincere remorse.

e.  His misconduct did not involve the abuse of an attorney/client relationship.

f.  No harm was brought to any client's legal interests as a result of his misconduct.

g.  Respondent suffered from chronic alcoholism during the relevant periods of time.

h.  After his arrest, Respondent sought treatment for alcoholism and has remained sober for almost two years since approximately June 6, 2003.

i.  He currently attends Alcoholics Anonymous four to six times per week

j.  He has been active with Lawyers Helping Lawyers since June 7, 2003 before and after going to the Betty Ford Center for inpatient treatment.

k.  He is willing to submit to and abide by a probationary term and any conditions deemed appropriate for any period of time as ordered by the Supreme Court to ensure that he continues to manage his illness properly and to conform his behavior with the strict requirements set forth by the ORPC and RGDP.

l.  He acknowledges that he is responsible for the costs of the investigative and disciplinary proceedings if discipline is imposed.

m.  He understands the stipulations of fact, conclusions of law and recommendations of discipline are not binding on the Supreme Court which exercises exclusive de novo review.

therapy as needed," he stated he was not involved in that type of treatment.

¶ 15 Garrett stated that he did not think he was an alcoholic before the felony charges were filed and that no one in the last twenty years told him he should quit drinking. He took such action at this time after talking with Glenn Mirando and personalizing Mirando's previous comments made to a friend of Garrett's seeking help from LHL. Garrett also testified that a person who is addicted to mind altering substances must realize he is not in control and that the drug is in control. He said in AA it is called a "bottom." The most recent events finally caught his attention. He does not know why the earlier ones did not do so.

¶ 16 He testified he tried to repay his debt to J.L. and T.C. with an apology in court and payment of damages. He is glad they came forward and filed formal complaints. It was significant enough to make him realize what a problem alcohol had become in his life. He feels sorry for them and their families and what they have been through.

¶ 17 Garrett also testified he understands he embarrassed every lawyer in the State. He thinks the events in this case show that when a lawyer commits a crime, the Bar will hold him accountable. He believes the actions taken in his case have been appropriate and reflect well on the Bar because it has publicly shown what happens to lawyers who don't follow the Rules of Professional Responsibility. He said, "I think what I did is bad, but I think what the Bar has done is—is appropriate." He wants to repay his debt to the Bar and will do so by working with other lawyers the way he is working with Glenn Mirando and LHL. He stated his illness was "the lack of love for our fellow man," along with alcohol.

¶ 18 When asked his opinion of the Bar's recommendation for discipline, he testified he is hopeful this Court will follow it. He would like to think he can do a lot of good as a lawyer if allowed to practice. However, he will accept whatever the Court decides to impose upon him. While not trying to minimize his actions, he stated that none of these events involved clients. He also stated these events all involved alcohol from which he had abstained for almost two years at that time. He also noted Mirando would know pretty soon if he started drinking again.

¶ 19 Glenn Mirando testified on Garrett's behalf. Mirando is an attorney in general practice in Tulsa and is the Director of LHL. He also teaches a course at the OU Medical Center in psychiatry and the law. At Tulsa University, he teaches Psychology 101 and human relations. He met him in 2002 when Garrett referred an attorney to LHL. He said Garrett contacted him again in 2003 after his arrest. Mirando thought Garrett needed in-patient detox treatment with medical help for 30 days. He believes Garrett has changed since his treatment at BFC.

¶ 20 Mirando stated Garrett has a contract with LHL. He agrees to attend AA meetings, be randomly tested, have contact with a mentor and work with AA sponsors. Mirando knows Garrett attends AA meetings because he sees him there. He also stated that LHL would probably know within thirty days if someone started drinking again.

¶ 21 Mirando testified Garrett has done everything, and more, that he would want someone in recovery to do. He helps newcomers to LHL and has given financial help to "Twelve & Twelve Recovery Center" in Tulsa, on whose Board Mirando serves. He testified that if Garrett continues doing what he is doing with regard to his alcoholism, he would be fit to practice law. He cannot think of anything that Garrett could have done to address his alcohol problem that he has not done.

¶ 22 Mirando testified Garrett expressed feelings of remorse. He also expressed feelings of embarrassment for his family, the families of the two women who complained against him and all lawyers in the State. He also expressed the guilt and shame of what he did and how it affected the legal community and Muskogee as a whole. He stated that if Garrett continues his program of recovery, he has no concerns or fears about his practicing law.

¶ 23 Mirando spoke about "blackouts" experienced by alcoholics. He was asked the question in connection to Garrett's assertion that he did not remember assaulting either

J.L. or T.C. because of his highly intoxicated condition each time. See Stipulations, note 4, *supra*. Mirando stated such condition was "absolutely" in sync with his concept of blackouts from alcohol. He also said it would be feasible, in his experience, for someone to drive a car or to touch a woman's breast in a bar, and yet not recall doing it.

¶ 24 Mirando testified BFC's recommendation for weekly psychotherapy was a general recommendation, but that it could have been suggested for treatment of lingering issues such as grandiosity, narcissism, self-centeredness and self-serving behavior. Mirando stated that through the recovery process, these issues dissipate. He also testified the AA meetings are similar to group therapy. After one year of sobriety, the chances of long-term sobriety increase greatly, and the chances of staying sober increase as time goes on. Mirando also said the 12–step program and the goals and recovery through AA, with life changes, will prevent any recurrence of criminal or sexual problems. The sexual issues were seen by BFC as related to errors in judgment, the alcoholism and his boundaries being misplaced. He is more balanced since the BFC treatment and has done exceptionally well in AA. He has different priorities now and is getting what he needs through AA and LHL.

¶ 25 The medical evidence from BFC was admitted under seal. We have reviewed the evidence, including the recommendation and report of the medical director at the BFC. Garrett's principal diagnosis was "alcohol dependence." Although the discharge report noted there had been some concern about his sexual compulsivity, it was determined he did *not* have a "sexual addiction diagnosis." It was recommended that Garrett continue regular and frequent AA meetings, become associated with a sponsor, and continue working the 12–step program. Additionally, it was recommended that Garrett be involved with LHL and attend regular meetings. He was discharged with staff approval.

¶ 26 Also testifying on his behalf was Judge Mike Norman and attorney Mickey Walsh who spoke as to Garrett's good character and his fitness to practice law.[16] They also testified they were surprised by the allegations in the complaint, but were impressed that he never denied the allegations and understood that discipline is required in this case. Both testified that Garrett had expressed his remorse to them for his actions. Although Walsh stated he was unaware of Garrett's drinking problem, Judge Norman testified he was aware of it. Judge Norman also testified he believes Garrett is committed to staying sober and that he sees a difference in him since his treatment at BFC.

## APPROPRIATE DISCIPLINE

¶ 27 As stated above, the instant case presents a different factual scenario in Oklahoma. The Bar has cited us to *State ex rel. Oklahoma Bar Association v. Foster*, 2000 OK 4, 995 P.2d 1138,[17] as a case similar to the instant case. *Foster* is important because this Court held that discipline can be imposed outside the attorney-client relationship. Although the victim in *Foster* was a minor, this Court imposed discipline of a public censure. It was found there had been no previous disciplinary investigations commenced against him after fifty years of practice, that he had complied with the terms and conditions of his probation, admitted his misconduct and accepted responsibility, and that he was a retired judge and no longer practiced law. Garrett contends a public censure is certainly appropriate in the instant case if it was imposed for conduct against a minor

---

16. In addition, there were numerous letters written on Garrett's behalf from judges and attorneys who gave positive opinions about his character, his integrity and honesty. While they did not condone his behavior leading to his arrests, they applaud his taking responsibility for his actions and attempting to turn his life around. Also admitted into evidence is the affidavit from J.L.'s father, also an attorney, who is understandably bitter and skeptical of Garrett's conversion.

17. In *Foster*, an attorney made improper comments to a minor after he looked at her breasts while changing her clothes in his car. He stated she had nice breasts which should be photographed. Although Foster had entered a plea of *nolo contendere* to the charge of assault with the intent to commit a felony, the only issue before this Court involved his viewing the minor's breasts and making inappropriate comments to her.

which seems more egregious. However, besides the obvious difference that the victim was a minor, no alcohol was involved in *Foster*. Because of the lack of Oklahoma cases in point to the instant case, the Bar has cited us to cases in other jurisdictions with similar factual scenarios. See *In re Saboorian*, 770 A.2d 78 (D.C., 2001);[18] *In the Matter of Addonizio*, 95 N.J. 121, 469 A.2d 492 (N.J., 1984).[19] In *Addonizio*, the New Jersey Supreme Court rejected the Disciplinary Review Board's proposal of a public reprimand, despite a finding the Respondent's behavior was aberrational and unlikely to reoccur. The Court held, citing *Matter of Wilson*, 81 N.J. 451, 456, 409 A.2d 1153 (N.J., 1979), that "the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers." *Addonizio*, 95 N.J. 121, 124, 469 A.2d 492. We also seek in this case to preserve the confidence of the public in the legal profession.

¶ 28 The overwhelming evidence in this case indicates Garrett's problems stemmed from the abuse of alcohol. While one may argue this case should have been prosecuted as a violation of Rule 10, RGDP, there was no evidence Garrett's alcoholism impaired his ability to conduct his clients' affairs in his law practice. See *Donnelly*, 1992 OK 164, 848 P.2d 543, 548.[20] There was, however, clear and convincing evidence that Garrett's actions after his arrest have shown a commitment to maintaining his sobriety through AA and LHL and to make amends to his victims.

He wishes to continue practicing law, having moved to a new community. He has displayed an understanding of the seriousness of his actions and the misery he brought to his victims. He understands that he has brought discredit to the legal profession and shame and embarrassment to his family and the families of his victims. He understands this Court may accept or reject the stipulated proposed discipline, and he has agreed to accept whatever discipline this Court finds appropriate.

¶ 29 The stipulated conditions, set out at note 5, *supra*, to be met during a one-year probation are appropriate for encouraging a permanent change of life style for Garrett. His participation in AA and LHL will provide him with invaluable counsel from people with similar experiences. Indeed, the evidence shows he has expressed his remorse for his actions and his desire to live his life differently. He has taken responsibility publicly for his actions by admitting his alcohol addiction, accepting the allegations against him as fact, publicly apologizing and committing himself to in-patient treatment. He has also become involved with AA and the 12-step program, as well as LHL, meeting the terms of his voluntary contract with that program. He stated he intended to repay his debt to the Bar and legal profession by helping other lawyers who need the type of help he has received. He has met the terms of his criminal probation.

¶ 30 The recommendation of a one-year probation, with conditions, constitutes a wor-

---

18. The Respondent pled *nolo contendere* in California to one count of misdemeanor sexual battery. He was placed on three years' probation which he completed successfully. The California Bar suspended him from practicing law for two years, but stayed execution of the suspension and placed him on probation for two years subject to certain conditions. His misconduct did not involve a client or a pattern of abuse. The D.C. Court of Appeals imposed reciprocal discipline in the form of a two-year suspension, recommending the suspension be stayed and the Respondent placed on two years of unsupervised probation on condition he refrain from misconduct violating disciplinary rules of any jurisdiction in which he was licensed.

19. The New Jersey Supreme Court imposed a three-month suspension in a case in which the Respondent entered a guilty plea to criminal

sexual contact, an offense of the fourth degree in New Jersey. It arose indirectly from a lawyer-client relationship but not related to the practice of law. It was held the conviction represented an isolated instance unlikely to reoccur. The Disciplinary Review Board found Respondent's conduct was unethical and recommended a public reprimand. The Court, however, imposed a three-month suspension because it more appropriately reflected the seriousness of the misconduct and would adequately protect the public.

20. In *Donnelly*, this Court also found that when the Respondent's alcoholism was controlled, the public was protected and his condition did not warrant a finding he was an "incapacitated practitioner." Thus, we found the disciplinary proceeding was properly treated as a Rule 6, rather than a Rule 10, proceeding warranting discipline.

thy objective to allow Garrett to maintain his sobriety and his rehabilitation, while also continuing his practice of law. Compliance with these conditions will prove the depth of Garrett's sincerity for living a new life. If it appears that Garrett has failed to comply with the conditions, the LHL Program shall advise the Bar. Because we must consider the goal of protecting the public and instilling confidence in the legal profession, we adopt the recommendation of the Trial Panel and impose discipline of a public censure, one-year probation, subject to the conditions previously noted, and the payment of costs incurred in this proceeding in the stipulated amount of $1,251.62. The one-year probation shall begin on the date of this opinion. Garrett is also ordered to pay the costs of this proceeding within ninety (90) days of the date of this opinion.

¶31 **PUBLICLY CENSURED; ONE–YEAR PROBATION WITH CONDITIONS; PAYMENT OF COSTS.**

WINCHESTER, V.C.J., LAVENDER, KAUGER, EDMONDSON, COLBERT, JJ., concur.

HARGRAVE, J., concurs in part, dissents in part.

OPALA, J., dissents.

TAYLOR, J., dissents.

"I respectfully dissent. It is important to note that the record in this case shows that the felony sexual assault charges filed against Garrett were reduced to misdemeanor battery charges *after* he paid $50,000.00 to each of the victims. This case presents issues that strongly affect public confidence in our legal system. In order to effectively safeguard the interests of the public, the courts and the legal profession, he should be suspended from the practice of law for a lengthy period of time."