2007 OK 3

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION,** Complainant,

v.

**Randy L. WAGNER, Respondent.**

**SCBD No. 4897.**

Supreme Court of Oklahoma.

Jan. 16, 2007.

Nathan A. Lockhart, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

David Henneke, Enid, OK, for Respondent.

## OPINION

WATT, Justice.

¶ 1 The Oklahoma Bar Association (OBA) filed a complaint on April 13, 2004, against Randy L. Wagner, a licensed attorney in Oklahoma, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1, App. 1–A. The OBA alleged

Wagner's misconduct violated the Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, app. 3–A, and are cause for professional discipline as provided in the RGDP.

¶2 This disciplinary proceeding arises from a grievance filed against Wagner by then Assistant City Attorney for the City of Enid, Jennifer Gideon, his opposing counsel in a case filed in the Workers' Compensation Court (WCC). Wagner represented the claimant, a former employee of the City of Enid. The complaint alleges Wagner advised his medical expert, Dr. M., just prior to the expert's deposition, that the claimant had worked for another employer, Gleeson Construction, following his employment with the City of Enid. He was injured while at Gleeson and filed a separate workers' compensation claim. This subsequent employment coincided with the time in which the claimant was allegedly temporarily totally disabled (TTD) from his City of Enid injury. It was alleged in the complaint that Wagner told Dr. M. that he did not know if Gideon knew about the Gleeson employment or the claim "and also that he didn't want Gideon to know about the subsequent work and injury." The Gleeson Construction employment was not mentioned at the deposition.

¶3 The complaint, containing one count, alleges violations of Rules 3.3,[1] 3.4,[2] and Rule 8.4(c), (d)[3] of the Oklahoma Rules of Profes-

sional Conduct (ORPC). Following a hearing before the trial panel of the Professional Responsibility Tribunal (PRT), the PRT found the OBA had failed to sustain its burden with clear and convincing evidence to show Wagner committed professional misconduct which warranted discipline.[4] The PRT recommended to this Court that the OBA's complaint against Wagner be dismissed.

¶4 The OBA contends the Trial Panel's recommendation for dismissal does not adequately address Wagner's misconduct and fails to protect the public and courts from similar misconduct in the future. It contends that while its allegations regarding Wagner's alleged fraud and misrepresentation may have been answered by the evidence, Wagner should be disciplined for his failure to amend the discovery responses fully in the workers' compensation case, upon realizing they were incorrect. The OBA recommends, at a minimum, the imposition of a public censure.

## JURISDICTION AND STANDARD OF REVIEW

¶5 In disciplinary proceedings this Court acts as a licensing court in the exercise of our exclusive jurisdiction. See *State of Oklahoma, ex rel. Oklahoma Bar Association v. Garrett*, 2005 OK 91, 127 P.3d 600;

---

1. In pertinent part, ORPC Rule 3.3(a)(4)(B) provides:

   **Rule 3.3. Candor Toward the Tribunal**
   (a) A lawyer shall not knowingly:
   . . .
   (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take the following remedial measures:
   . . .
   (B) when a person other than a client has offered false evidence, the lawyer shall promptly reveal its false character to the tribunal.

2. In pertinent part, ORPC Rule 3.4(d) provides:

   A lawyer shall not:
   . . .
   (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party; . . . .

3. In pertinent part, ORPC Rule 8.4(c)(d) provides:

   It is professional misconduct for a lawyer to:
   . . .
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
   (d) engage in conduct that is prejudicial to the administration of justice; . . . .

4. The Report of the Trial Panel provides in part:

   This tribunal finds said omissions were unintentional mistakes or oversights by Mr. Wagner. He admitted same and corrected them. Additionally, this tribunal feels the omissions were de minimis, were corrected and caused no harm to the workers' compensation claimant as his case was settled in a satisfactory manner.

   The tribunal finds that Complainant failed to prove its case by clear and convincing evidence. It presented insufficient evidence of unfairness, lack of candor or intentional fraud, dishonesty, deceit or misrepresentation by Mr. Wagner.

*State of Oklahoma ex rel. Oklahoma Bar Association v. Taylor*, 2003 OK 56, 71 P.3d 18. We have a constitutional, nondelegable responsibility to decide whether misconduct has occurred and what discipline is appropriate. *Garrett*, 2005 OK 91, ¶ 3, 127 P.3d 600, 602. We exercise this responsibility, not for the purpose of punishing an attorney, but to assess his or her continued fitness to practice law, *Taylor*, 2003 OK 56, ¶ 22, 71 P.3d 18, 29, and to safeguard the interests of the public, the courts and the legal profession. *Garrett*, 2005 OK 91, ¶ 3, 127 P.3d 600, 602, *State of Oklahoma, ex rel. Oklahoma Bar Association v. Wagener*, 2005 OK 3, 107 P.3d 567.

■ ¶ 6 Our review of the record is *de novo* in which we conduct a non-deferential, full-scale examination of all relevant facts; the recommendations of the trial panel are neither binding nor persuasive. *Garrett*, 2005 OK 91, ¶ 8, 127 P.3d 600, 603–604; *State ex rel., Oklahoma Bar Association v. Groshon*, 2003 OK 112, ¶ 5, 82 P.3d 99, 103. We consider all of the evidence to determine if allegations of misconduct are established by clear and convincing evidence. *Taylor*, 2003 OK 56, ¶ 2, 71 P.3d 18, 21; RGDP Rule 6.12(c), 5 O.S.2001, Ch. 1, App. 1–A.[5]

■ ¶ 7 We have a responsibility to ensure the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline. *State of Oklahoma, ex rel. Oklahoma Bar Association v. Adams*, 1995 OK 17, 895 P.2d 701. We find the record submitted in this proceeding[6] is sufficient for our *de novo* review.

### FACTS

¶ 8 Wagner initiated two workers' compensation cases for Claimant. The employer in the first case was the City of Enid (Enid case). The employer in the second case was Gleeson Construction. The WCC paperwork shows the injuries occurred approximately five weeks apart. After the Enid case was filed, the City hired an investigator. Videos were obtained by the investigator showing Claimant mowing the lawn for several hours at a time, although he claimed to be temporarily totally disabled (TTD) at the time. In the Enid case, he alleged he suffered injury to his back, head and neck, and that he sustained a "sprain and strain." In the Gleeson case, he alleged he injured his head and nose in the form of a "concussion/sprain strain." The investigator also obtained information about other pending claims filed by Claimant.

¶ 9 In support of the Enid claim, Wagner obtained a medical report from Dr. M., who examined Claimant. Dr. M. opined Claimant was TTD from the date of the injury on February 6, 2003. The medical report did not indicate any subsequent employment had occurred after the injury in the Enid case. However, Dr. M. admitted he did not ask if there had been any subsequent employment, which he admitted was an error on his part.

¶ 10 Gideon testified that when the City of Enid learned about Claimant's ability to mow yards during his alleged TTD period, it contacted the Workers' Compensation Fraud Unit at the Oklahoma Attorney General's Office (AG's office). The AG's office suggested taking Dr. M.'s deposition. Just before the deposition began, Wagner asked to speak privately to Dr. M. She testified they went into the doctor's office, and Gideon remained in the waiting area. Gideon testified she overheard their conversation. She stated Wagner told Dr. M. that he did not know if Gideon knew about the Gleeson employment and that he did not want her to know about it. She said he told Dr. M. that his medical report was wrong as to the TTD period because Claimant worked elsewhere after his injury in the Enid case. She also stated Wagner told Dr. M. he couldn't help him with answering questions at the deposition be-

---

5. Rule 6.12(c), RGDP, provides:

> (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings.

6. The record in this case consists of: the Complaint, the Answer, Report of the Trial Panel, Application to Assess Costs, Objection to Assessment of Costs, the transcript from the hearing before the Professional Responsibility Tribunal on April 19, 2006, and exhibits admitted at the hearing.

cause he had not previously done a deposition with Gideon.

¶ 11 At the deposition, Gideon asked Dr. M. if there was anything that had subsequently occurred to change his opinion about his report. He answered in the negative. After the deposition, Gideon told them she had overheard their conversation, expressed her disgust for the way they had proceeded during the deposition and warned them that she was going to make a report to the AG's fraud unit about them.

¶ 12 When asked at the PRT hearing about the reasons for his answers at the deposition, Dr. M. responded that he had answered the questions based on the information contained in his report which reflected the history gathered from Claimant. Anything learned subsequent to his examination was not in his report. He testified that she only asked questions about his report, and anything he learned subsequently was irrelevant.

¶ 13 Claimant's Enid injury occurred on February 6, 2003, when he was in an accident as a passenger in a City of Enid garbage truck. The Form 3, which initiates a WCC case, indicated he injured his back, head and neck, caused by a "sprain and strain." In his Form 9, motion to set for trial, Claimant's TTD period was stated as "2–6–03 to indefinite." [7] The City of Enid fired Claimant because he was not wearing his seatbelt. Claimant's Gleeson injury occurred on March 8, 2003. The Form 3 in that case indicated that a board hit his nose, injuring his head and nose, causing a "concussion/sprain strain."

¶ 14 City of Enid served interrogatories on Claimant through Wagner, who instructed Claimant to provide answers and return them to his secretary to prepare. Wagner testified his secretary typed the answers verbatim from the claimant's answers. Wagner does not recall going over those answers before they were mailed to Gideon. The answers to at least two interrogatories have created a misunderstanding in this case which has caused the appearance of deceit by Wagner. The interrogatories, # 26 and # 27, are stated as follows:

26. Identify all workers' compensation claims which you have filed at any time for any reason; state the date on which each such claim was filed, the reason it was filed, and the exact nature of the injury for which the claim was made; identify your employer at the time of such injury; and identify all docket numbers or other claim identification numbers related to such claims.

27. List by case name, court and docket reference all litigation or proceedings in which you have filed a claim for alleged personal injury.

¶ 15 Claimant answered the interrogatories in his own handwriting. In his answer to number 26, the claimant indicated he had settled a workers' compensation claim for an injury to his foot on April 3, 1999, working for a different employer. In his answer to number 27, he indicated no claims were filed in the past. The answers were given to Wagner's secretary who typed the answers as they were written. Wagner admitted he signed "Claimant's Answers to Respondent's Interrogatories" without checking them, and they were sent to Gideon. Wagner testified that he did not realize until after Dr. M.'s deposition that the answers were incorrect.

¶ 16 Wagner testified he told Gideon about previous injuries while Claimant worked for Car Mart and the Salvation Army. He stated that when he told her about them, he did not realize Claimant's interrogatory answers were wrong as to Gleeson. Therefore, he did not mention the Gleeson case at the doctor's deposition because he assumed she knew about it. He testified that before the deposition, Wagner and Dr. M. discussed medical records. Dr. M. told Wagner that Claimant's complaints in the Gleeson case, which Dr. M. referred to as a "nose bleed", were not consistent with his injuries in the Enid case. Moreover, his nose injury had been resolved, requiring only a visit to the emergency room. Claimant only requested the amount of his

---

7. Wagner testified that it is customary to indicate "indefinite" because you don't normally have "exact dates of when they're off and when they're on. You try to get that sorted out before trial."

emergency room bill, approximately $250, and no permanent disability was sought.[8]

¶ 17 Wagner's version of his discussion with Dr. M. before the deposition varies with Gideon's. Wagner testified he told Dr. M. his medical report was wrong as to Claimant's TTD and medical history because of the second injury and handed him medical records from the Gleeson claim. Wagner told him there would be an issue as to causation and that there might be a possibility of consolidating the cases. Wagner testified he told Dr. M. that "[w]hen she asks you about TTD and all that, just tell her that it's incorrect now and tell her the reason why." Wagner also told Dr. M. he needed to re-examine him because he had been made aware of three other employments. Wagner told him he would have to change his opinion on the extent of the TTD period because Claimant couldn't be TTD while employed. The conversation lasted about five minutes.

¶ 18 Wagner testified he signed the interrogatory answers without reading the finished pleading. He admits this was a mistake. He stated he supplemented the interrogatory answers in a letter to Gideon within a week after the deposition. He testified he later had other WCC cases with her, but it was not like the problems in this case. He said he never told Claimant or Dr. M. not to say certain things about this case or the Gleeson case. He did not intentionally tell his secretary to omit information about the Gleeson injury. He does not feel he violated Rules 3.3, 3.4 or 8.4, as he did not knowingly make the mistakes. He admitted his mistake was not reviewing the interrogatories thoroughly and that the whole thing has been a misunderstanding. He stated he does not know what Gideon thinks she overheard him say to the doctor. He described the "gist" of what he told Dr. M.:

> I was trying to get Dr. [M.] to write information so he could address her questions. Unfortunately, she didn't address them. I wish she would have asked different questions and one thing I probably should have done differently is I should have probably

said, you know, Dr. [M.], why don't you ... address this other injury and go ahead, and put all those things on the record. That's not really my job to do, but I guess that's the only thing I could have done differently.

¶ 19 He does not feel he engaged in any conduct involving dishonesty, fraud, deceit or misrepresentation. He testified he did not unlawfully alter, destroy or conceal any evidence in this case, although he did not do a good job on the interrogatories. He tried to set the record straight before the doctor's deposition as far as what was going on in Claimant's life, but he did not know the interrogatory was wrong until after the deposition. He also stated he does not know "why all of this is going on" because he supplemented his answers, and Gideon already had the Form 3 from the Gleeson case.

■ ¶ 20 The findings of the PRT are supported by clear and convincing evidence as to the allegations of fraud and deceit. The testimony showed a misunderstanding occurred due to a mistake during discovery. However, the mistake was made because Wagner failed to read the interrogatory answers before signing them and sending them to Gideon. The answers he signed never mentioned the Gleeson case which understandably led to Gideon's suspicions after seeing video of the claimant mowing lawns and after overhearing a conversation between Wagner and Dr. M. Although Wagner was careless in completing the discovery answers, his carelessness did not cause a hardship to his client or to any member of the public.

¶ 21 While we do not condone the practice of signing interrogatory answers without reading them, we must judge this action from the standpoint of whether someone was harmed because of Wagner's violation of a rule of professional responsibility. Citing *State ex rel. Oklahoma Bar Ass'n v. Bourne*, 1994 OK 78, 880 P.2d 360 and *State ex rel. Oklahoma Bar Ass'n v. Hine*, 1997 OK 52, 937 P.2d 996, the Bar contends Wagner violated Rule 8.4(d) because there was a reasonable likelihood his actions would prejudice

---

8. Settlement in the Gleeson case was discussed, apparently in the amount of approximately

$250.00, although Wagner withdrew from the case before an agreement was reached.

the pending workers' compensation proceeding. It asserts that without the subsequent injury, the City of Enid's responsibility for paying disability benefits might have increased. This ignores the fact, however, that the City of Enid, through Gideon, had a copy of the Form 3 in the Gleeson case before Dr. M.'s deposition. Thus, the City of Enid had in its possession the information it alleged Wagner had withheld. Although Wagner contributed to the confusion by carelessly signing the pleading containing the erroneous answers, he attempted to rectify his mistake by amending the answers. We agree with the PRT that the OBA failed to meet its burden of proof by clear and convincing evidence that Wagner violated a rule.

¶ 22 The OBA has filed an application for costs against Wagner in the amount of $2,525.82. However, this Court has declined to impose costs against a Respondent who has not been shown to have violated an ethical rule.[9] See *State ex rel. Oklahoma Bar Ass'n v. Harper*, 2000 OK 6, 995 P.2d 1143. Pursuant to Rule 6.16, RGDP, the costs of investigation, the record and disciplinary proceedings shall be surcharged "[w]here discipline results." The OBA's application for costs is therefore denied.

## CONCLUSION

¶ 23 We adopt the findings and conclusions of the PRT that the OBA failed to show by clear and convincing evidence that Wagner violated the ORPC or the RGDP. The complaint is thus dismissed. The OBA's application for costs is denied.

¶ 24 **COMPLAINT IS DISMISSED; APPLICATION FOR COSTS IS DENIED.**

WINCHESTER, C.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, OPALA, WATT, TAYLOR, COLBERT, JJ., concur.

KAUGER, J., not voting.

---

9. In *State ex rel. Oklahoma Bar Ass'n v. Watson*, 1989 OK 72, 773 P.2d 749, 751, we declined to grant the request of Respondent, who was found to have violated no ethical rule, to impose costs on the Oklahoma Bar Association. We noted therein that the purpose of Rule 6.16, RGDP, is "to provide authority for assessing costs *against a respondent who has been disciplined.*" [Emphasis added.]