STATE ex rel. OKLAHOMA BAR ASSOCIATION v. EZELL



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. EZELL

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. EZELL
2020 OK 55
466 P.3d 551
Case Number: SCBD-6847
Decided: 06/16/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 55, 466 P.3d 551

 

STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JULIA MARIE EZELL, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 Pursuant to Rule 7 of the Rules Governing Disciplinary Proceedings, this summary disciplinary proceeding arises from Respondent's plea of guilty to misdemeanor crimes of using a computer to violate Oklahoma statutes and falsely reporting a crime. This Court issued an Order of Immediate Interim Suspension of Respondent's license to practice law. After a hearing before the Professional Responsibility Tribunal, it recommended that this Court suspend Respondent for one year, effective from the date of her interim suspension.

THE RESPONDENT IS SUSPENDED FOR ONE YEAR EFFECTIVE FROM
THE DATE OF INTERIM SUSPENSION AND ORDERED TO PAY COSTS.

Gina L. Hendryx, General Counsel of the Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Edward Blau, Blau Law Firm, Oklahoma City, Oklahoma, for Respondent.

Winchester, J.

¶1 This is a summary disciplinary proceeding initiated pursuant to Rule 7 of the Rules Governing Disciplinary Proceedings[1] based upon Respondent Julia Marie Ezell's plea of guilty to two misdemeanor counts of (1) Falsely Reporting a Crime in violation of 21 O.S.2011, § 589, and (2) Use of a Computer to Violate Oklahoma Statutes in violation of 21 O.S.2011, § 1958.

¶2 On October 22, 2019, the Oklahoma Bar Association (OBA) notified the Court of Ezell's plea of guilty. On November 4, 2019, this Court entered an Order of Immediate Interim Suspension. On December 16, 2019, this Court assigned the matter to the Professional Responsibility Tribunal (Trial Panel) to hold a hearing on the limited scope of mitigation. On January 28, 2020, the Trial Panel held a Rule 7 hearing. On February 27, 2020, the Trial Panel filed its report, recommending that this Court suspend Ezell for one year, effective from the date of her interim suspension.

I. FACTS

¶3 In 2006, Ezell received her license to practice law in Oklahoma. She practiced law, in good standing, until the date of her interim suspension.

¶4 Ezell became General Counsel for the Oklahoma State Department of Health (OSDH) in November 2017. The agency tasked Ezell with drafting the rules and regulations to govern the implementation of legalized medical marijuana in Oklahoma. Ezell contends interested parties within the Oklahoma state government and the Oklahoma State Board of Health were attempting to influence the promulgation of the administrative rules, pushing to include two unlawful rules which required pharmacists in each dispensary and banning "smokables." Ezell voiced her concerns regarding the unlawful rules, but the interested parties told her to draft the rules to include the two constraints.

¶5 Ezell experienced extreme stress due to the pressure to draft the medical marijuana rules, including those she believed were unlawful, and problems in her personal life. On account of the stress, Ezell began sending threatening emails from a fictitious email address to her official government email address that appeared to be authored by proponents of the medical marijuana referendum. She obtained the fictitious email address from protonmail.com (Proton Mail). From July 8, 2018, until July 12, 2018, Ezell sent ten emails to herself with escalating threats to her safety.

¶6 Ezell immediately reported the first email to an investigator at OSDH. On July 9, 2018, OSDH requested that the Oklahoma State Bureau of Investigation (OSBI) investigate the threatening emails. The Edmond Police Department provided surveillance at Ezell's workplace and home. The Edmond Police Department also escorted Ezell from work and checked Ezell's personal vehicle for a GPS device. The University of Oklahoma Health Sciences Center's Police Department provided Ezell further security while she was at her workplace. OSBI placed pole cameras in Ezell's neighborhood to monitor Ezell's house and the traffic in the neighborhood.

¶7 After OSBI launched its investigation, Ezell continued to send emails with escalating threats to herself. Ezell also provided to OSBI names of individuals that she believed could have access to her phone or be sending her threatening emails. As a result, OSBI obtained information on medical marijuana proponent groups and contacted law enforcement across the United States requesting information on similar threats. OSBI, through the assistance of a Mutual Legal Assistance Treaty (MLAT) request to Switzerland, ultimately determined that the Proton Mail account was registered to Ezell's husband.

¶8 On July 12, 2018, Ezell turned her phone over to OSBI, who performed a forensics examination of the phone. OSBI determined Ezell was responsible for creating the Proton Mail email account and sending the emails at issue. On July 13, 2018, OSBI met with Ezell to discuss the results of the forensics examination of her phone. Ezell continued to implicate other individuals who could be responsible for the emails and did not take responsibility for her actions. It was not until OSBI confronted Ezell with the information gathered from the forensics examination that Ezell admitted her wrongdoing. Ezell then confessed to OSBI that she was responsible for the threatening emails.

¶9 On July 17, 2018, the Oklahoma County District Attorney charged Ezell with two felonies, Presenting False Evidence at Trial and Using a Computer to Violate Oklahoma Statutes, and one misdemeanor, Falsely Reporting a Crime. The Oklahoma County District Attorney eventually dismissed one felony charge and reduced the other felony charge to a misdemeanor. Ezell pled guilty to two misdemeanor counts, Falsely Reporting a Crime and Use of a Computer to Violate Oklahoma Statutes. The district court ordered her to pay $21,810 in restitution for the costs involved in the OSBI investigation, which Ezell paid upon entering her plea of guilty. The district court deferred sentencing until October 15, 2024. Ezell fully paid all court costs, fees, and probation fees in advance.

II. MITIGATION

¶10 After confessing to OSBI regarding her wrongdoing, Ezell resigned from her position as General Counsel of OSDH. Ezell sought inpatient treatment at Oakwood Springs. Less than twenty-four hours later, Oakwood Springs released Ezell from inpatient treatment finding Ezell had no underlying mental issue but was undergoing extreme stress, anxiety, sleep-deprivation, and adjustment disorder. Instead, Ezell sought outpatient treatment four days a week for three and a half hours a day for approximately four weeks. Ezell's treatment centered around learning coping skills for anxiety and stress. Ezell then began private counseling. Ezell continues to attend therapy with Jackie Shaw, who diagnosed Ezell with anxiety and chronic depression. Ms. Shaw recommends that Ezell continues with therapy and medication for her anxiety.

¶11 At the hearing before the Trial Panel, Ezell testified regarding her struggles in her position as General Counsel and her personal life. Ezell attempted to resign from the General Counsel position on two occasions due to the stress of the job, but her supervisor--for various reasons--urged Ezell to stay with OSDH. It was difficult for Ezell to resign from OSDH because she is the sole income provider for her husband and four children, including one child with special needs. Ezell testified her main motivation for sending and reporting the threatening emails was for law enforcement to obtain her cellphone, which contained what she perceived as evidence of the corruption surrounding the promulgation of the medical marijuana rules.

¶12 Ezell presented five character witnesses at the hearing, who all testified Ezell is a well-respected attorney and passionate about helping families with special needs. Ezell expressed remorse and shame for her actions, especially regarding the time and resources spent on the OSBI investigation.

III. STANDARD OF REVIEW

¶13 In disciplinary proceedings, this Court acts as a licensing court in the exercise of our exclusive jurisdiction. State ex rel. Okla. Bar Ass'n v. Garrett, 2005 OK 91, ¶ 3, 127 P.3d 600, 602. Our review of the evidence is de novo, and the Trial Panel's recommendations are neither binding nor persuasive. State ex rel. Okla. Bar Ass'n v. Anderson, 2005 OK 9, ¶ 15, 109 P.3d 326, 330. This Court's responsibility is not to punish an attorney, but to assess the continued fitness to practice law and to safeguard the interests of the public, the courts, and the legal profession. State ex rel. Okla. Bar Ass'n v. Wilburn, 2006 OK 50, ¶ 3, 142 P.3d 420, 422.

¶14 This Court also has the responsibility to ensure the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline. State ex rel. Okla. Bar Ass'n v. Adams, 1995 OK 17, ¶ 4, 895 P.2d 701, 704. We find the record submitted in this proceeding is sufficient for our de novo review.

IV. DISCUSSION

¶15 Ezell's plea of guilty to two misdemeanor charges of Falsely Reporting a Crime and Use of a Computer to Violate Oklahoma Statutes serves as the basis for this summary disciplinary proceeding. Rule 7.1 of the Rules Governing Disciplinary Proceedings (RGDP) provides:

A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

Rule 7, Rules Governing Disciplinary Proceedings, 5 O.S.2011, ch. 1, app. 1-A.

¶16 Not every criminal conviction facially demonstrates a lawyer's unfitness to practice law. State ex rel. Okla. Bar Ass'n v. Armstrong, 1990 OK 9, ¶ 8, 791 P.2d 815, 818. In fact, a lawyer should answer only for offenses that indicate lack of characteristics relevant to the practice of law. Rule 8.4, Cmt. 2, Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, ch.1, app. 3-A.[2] Answerable offenses typically involve violence, dishonesty, breach of trust, or serious interference with the administration of justice. Id.

¶17 Ezell's criminal conduct reflects adversely on her honesty and fitness to practice law in violation of ORPC Rule 8.4(b) and (c)[3] and RGDP Rule 1.3[4] and warrants discipline. Ezell sent emails to herself containing escalating threats and falsely reported the emails to OSDH, which launched an OSBI investigation that cost over $20,000. Ezell was not forthcoming with the truth when confronted with the information obtained by OSBI regarding the source of the threatening emails. Ezell's attempts to cover up her involvement in this scheme obstructed OSBI's investigation, and Ezell implicated a co-worker, a former high school acquaintance, and medical marijuana proponents as potential suspects. Ezell's actions resulted in the misuse and waste of state resources. Ezell admittedly had a motive and purpose to deceive her coworkers and law enforcement--even if the motive was for law enforcement to obtain evidence regarding potential fraud in the promulgation of the medical marijuana rules. State ex. rel. Okla. Bar Ass'n v. Besly, 2006 OK 18, ¶ 43, 136 P.3d 590, 605. Ezell pled guilty to the crimes of falsely reporting a crime--undoubtedly a crime involving dishonesty, fraud, and deceit--and the use of a computer to do so. Her conduct warrants discipline.

V. DISCIPLINE

¶18 This Court has not before addressed a disciplinary action that precisely mirrors the situation here, but we look to other examples for a baseline. In State ex rel. Oklahoma Bar Association v. Pacenza, 2006 OK 23, 136 P.3d 616, we made several observations that have equal force in this matter.

[O]ffenses against common honesty should be clear, even to the youngest lawyers; and to distinguished practitioners, their grievousness should be even clearer. Honesty and integrity are the cornerstones of the legal profession. Nothing reflects more negatively upon the profession than deceit. There can be little doubt that the attorney has brought discredit upon the legal profession.

Id. ¶¶ 32-33, 136 P.3d at 629 (emphasis added). This Court commonly suspends attorneys for conduct involving dishonesty, fraud, deceit, or misrepresentation, with the length dependent on the surrounding circumstances and degree of harm to the client.[5]

¶19 The most relevant case regarding discipline for an attorney's misuse of state-owned resources is State ex rel. Oklahoma Bar Association v. Olmstead, 2012 OK 71, 285 P.3d 1110. In Olmstead, a former Oklahoma Associate District Judge pled no contest and a district court convicted him of the felony crime of violating the Oklahoma Computer Crimes Act after he used his state-issued computer to download explicit material for his personal use. Since Olmstead held a position of public trust, the media reported his misconduct. The misuse of state property resulted in Olmstead's resignation from office. Id. ¶ 5, 285 P.3d at 1112. The Court found Olmstead's conduct violated the rules governing an attorney's conduct, was egregious, an abuse of trust, and brought great disrepute to the legal profession and the judiciary. Id. ¶ 7, 285 P.3d at 1113. The Court suspended Olmstead from the practice of law for one year. Id. ¶ 13, 285 P.3d at 1114.

¶20 Here, Ezell was a high-ranking public official with OSDH. Ezell's dishonest and deceitful acts of obtaining a fictitious email account, sending threatening emails to her official government email address, and falsely reporting these emails resulted in the misuse of state property and waste of law enforcement resources. Ezell's actions gained wide-spread media attention on both the local and national level. Ezell's conduct warrants discipline in line with Olmstead.

¶21 This Court does not agree that all the factors proposed by Ezell are mitigating. In State ex rel. Oklahoma Bar Association v. Kinsey, 2009 OK 31, 212 P.3d 1186, an attorney made thirteen false billing and travel claims to her law firm totaling over $15,000. When confronted, Kinsey admitted to these false submissions and resigned from her employment at the law firm. Id. ¶ 4, 212 P.3d at 1189. Kinsey took full responsibility for her improper actions but wanted to provide background information for a better understanding of her situation. Kinsey explained that she is a perfectionist with high expectations of herself and she encountered various stress-generating circumstances during the time she made the false billing and travel claims. Those stressful circumstances included her job as an associate attorney, her children, her family's need to move residences, her husband's unexpected loss of employment, and her need for personal time. Id. ¶ 6, 212 P.3d at 1190. Kinsey described her conduct as a "judgment in error" and asserted that the stresses in her life clouded her judgment. Id. ¶ 30, 212 P.3d at 1196.

¶22 The Court was not convinced that Kinsey comprehended the seriousness of her intentional and fundamentally dishonest conduct and did not accept Kinsey's explanation of her mental and emotional conditions as an excuse for her scheme of dishonesty and professional misconduct. Id. ¶ 31, 212 P.3d at 1196. This Court suspended Kinsey from the practice of law for one year. Id. ¶ 37, 212 P.3d at 1198.

¶23 Like in Kinsey, Ezell's mental and emotional conditions are not a justification for her scheme of dishonesty and professional misconduct. We acknowledge that Ezell sought counseling to address her mental and emotional conditions and continues to do so. Under the circumstances in this case, we think a one year suspension effective from the date of her interim suspension is sufficient to deter Ezell and other lawyers from similar misconduct in the future and to accomplish the goals of discipline.[6]

VI. CONCLUSION

¶24 Ezell's actions provide clear and convincing evidence of engaging in conduct that reflects adversely on the legal profession in violation of her professional duties pursuant to ORPC Rule 8.4 and RGDP Rule 1.3. The conduct serves as a basis for the imposition of discipline, which we must determine. We appreciate Ezell's remorse regarding her actions, and we are mindful of Ezell's mitigating circumstances, specifically her efforts to get counseling. This is the right course for her to take. Considering the Olmstead and Kinsey cases, we conclude the Trial Panel's recommendation is appropriate. This Court suspends Ezell from the practice of law for one year, effective from the date of her interim suspension.

¶25 The OBA filed an application to assess the costs of the disciplinary proceedings in the amount of $2,436.71. Ezell did not file an objection to this application. These costs include Trial Panel expenses and costs associated with the record, and each is permissible. See RGDP Rule 6.16. This Court orders Ezell to pay costs in the amount of $2,436.71 within ninety days of the effective date of this opinion.

THE RESPONDENT IS SUSPENDED FOR ONE YEAR EFFECTIVE FROM
THE DATE OF INTERIM SUSPENSION AND ORDERED TO PAY COSTS.

Gurich, C.J., Darby, V.C.J., Winchester, Edmondson, and Colbert, JJ., concur.

Kauger (by separate writing), Kane, and Rowe, JJ., concur in part, dissent in part.

Combs, J. (by separate writing), dissents.

Kauger, J., with whom Kane, J. and Rowe, J. join, concurring in part, dissenting in part:

"I would impose discipline for a period of one year from the date of this opinion."

FOOTNOTES

[1] Rule 7, Rules Governing Disciplinary Proceedings, 5 O.S.2011, ch. 1, app. 1-A.

[2] Comment 2, ORPC 8.4 provides:

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

[3] ORPC 8.4(b) and (c) provides in pertinent part:

It is professional misconduct for a lawyer to:

. . . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . .

[4] RGDP 1.3 provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[5] See e.g., State ex rel. Okla. Bar Ass'n v. Moisant, 2019 OK 55, 457 P.3d 1040 (suspending an attorney for one year and six months for engaging in the unauthorized practice of law and making dishonest statements to the court); State ex rel. Okla. Bar Ass'n v. Kerr, 2012 OK 108, 291 P.3d 198 (suspending an attorney for two years and one day for attempting to bribe a police officer); State ex rel. Okla. Bar. Ass'n v. Johnston, 1993 OK 91, 863 P.2d 1136 (suspending an attorney for four months for commingling and converting funds, making false statements to the court, professional incompetence, failure to act promptly and communicate with clients); State ex rel. Okla. Bar Ass'n v. Stubblefield, 1988 OK 141, 766 P.2d 979 (suspending an attorney for 30 days for misrepresentation in adoption and divorce proceedings); State ex rel. Okla. Bar Ass'n v. Peveto, 1980 OK 182, 620 P.2d 392 (suspending an attorney for one year for neglecting clients' affairs and knowingly making false statements to clients).

[6] Ezell argues a suspension longer than six months is inappropriate and urges the appropriate discipline is a public censure. Ezell cites to several attorney discipline cases involving alcohol-related offenses or sexual misconduct cases. The majority of the cases cited by Ezell included conduct outside of the attorneys' employment and did not affect an attorney/client relationship. This Court notes that the entirety of Ezell's conduct at issue was acting as General Counsel of OSDH.

COMBS, J., dissenting:

¶1 While I agree with the majority's determination that Respondent's criminal conduct reflects adversely on her honesty and fitness to practice law, I disagree as to what constitutes appropriate discipline under the circumstances. The Trial Panel recommended she be suspended for one year from November 4, 2019, the date of our interim suspension order. The majority opinion states the Respondent's conduct warrants discipline in line with State ex rel. Oklahoma Bar Ass'n v. Olmstead, 2012 OK 71, 285 P.3d 1110, yet it adopts the Trial Panel's recommendation. The opinion relies upon both Olmstead and State ex rel. Oklahoma Bar Ass'n v. Kinsey, 2009 OK 31, 212 P.3d 1186. In both cases the discipline of one-year suspension from the practice of law began from the effective date of the opinion, not the date of the interim suspension order. From the date this opinion will become effective, the Respondent will only be suspended for approximately five months. I do not believe this is an appropriate discipline to deter the Respondent and other lawyers from similar misconduct.

¶2 The Respondent's conduct is also not in line with either Olmstead or Kinsey. Her actions not only involved dishonesty but were the quintessential embodiment of "serious interference with the administration of justice"[1] and much more egregious than either of these two cases. The main similarities between the facts in the present case and Olmstead are that both concerned computer related crimes and the misuse of state resources; Olmstead concerned the misuse of a state computer to download inappropriate material and here the misuse of state resources concerns over $20,000 spent on a needless investigation. In Kinsey, a lawyer submitted false billing and travel expense reports on thirteen occasions totaling approximately $15,000. Id., ¶5. When confronted, she confirmed what she had done. Id. On the other hand, the Respondent in the present matter continued her charade with law enforcement for several days before she was caught. Only when confronted with irrefutable evidence did she admit what she had done. But for the expeditious forensic examination of her phone, the criminal investigation could have been very lengthy and costly.

¶3 The main reason I find this case so egregious is the fact that prior to being caught the Respondent continued to falsely and knowingly implicate other individuals and groups for her crime. These included a co-worker, a high school acquaintance and the medical marijuana proponents. Had the investigation been protracted, it is not hard to see how those individuals' lives and the proponents' cause would have been negatively and possibly irreparably affected. The Respondent's actions were also the subject of intense state and national media coverage. In my dissent in State ex rel. Oklahoma Bar Ass'n v. Hastings, I disagreed with the majority's final discipline of a two-year suspension from the practice of law. 2017 OK 43, ¶1, 395 P.3d 552 (Combs J., dissenting). I found the nature of Hastings' conduct deserved a suspension of two years and one day which would place significant requirements on seeking reinstatement. Id. Part of my reasoning was based upon Hastings' conduct which was the subject of intense media coverage and "thoroughly embarrassed and undermined the legal profession as a whole."[2] Id., ¶3. Like Hastings, the majority opinion notes that Respondent's actions "gained wide-spread media attention on both the local and national level." Her actions have brought disrepute and harmed the public image of the legal profession. See also Olmstead, 2012 OK 71, ¶7, 285 P.3d 1110.

¶4 The district court has deferred the Respondent's sentence until October 15, 2024; over four years into the future from the effective date of this opinion. One factor used by this Court to determine the appropriate period of professional suspension in a Rule 7 disciplinary matter, is the length of a lawyer's criminal sentence. State ex rel. Oklahoma Bar Ass'n v. Demopolos, 2015 OK 50, ¶19, 352 P.3d 1210; State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶8, 338 P.3d 639. In Demopolos, a lawyer received a two-year deferred sentence on three misdemeanor counts. Demopolos, 2015 OK 50, ¶¶1-2. His deferred sentence was set for review on January 6, 2017. Id., ¶2. This Court entered an interim suspension order on February 2, 2015. Id., ¶4. Our final discipline was to suspend him for one year from the date of his interim suspension with an additional one-year deferred suspension until February 3, 2017, which was a month after his deferred sentence would be reviewed. Id., ¶42. In Ijams, a lawyer was sentenced on four misdemeanor counts, which included obstructing a police officer. Ijams, 2014 OK 93, ¶3, 338 P.3d 639. Sentencing was deferred until December 23, 2015. We held "the goals established by this Court would be met by suspending the Respondent from the practice of law until December 23, 2015, the end of the deferred sentences." Id., ¶13. In State ex rel. Oklahoma Bar Ass'n v. Cooley, a lawyer pled guilty to felony offenses of making a false declaration of ownership of a firearm he pawned and falsely personating another to create liability in order to avoid arrest on his outstanding felony warrant. 2013 OK 42, ¶¶6-7, 304 P.3d 453. On February 13, 2013, he received a deferred sentence on both counts for a period of five years until February 5, 2018. Id. We held his conduct involved dishonesty and serious interference with the administration of justice and suspended him from the practice of law for the duration of his deferred sentences. Id., ¶15.

¶5 The Respondent's deferred sentence will last another four years. I have repeatedly expressed my concern on how this Court can protect the integrity of the legal profession if we allow a lawyer to practice law while on probation. State ex rel. Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶6, 323 P.3d 222 (Combs J., dissenting); State ex rel. Oklahoma Bar Ass'n v. Brown, 2013 OK 40, ¶3, 303 P.3d 895 (Combs J., dissenting). During this time a lawyer is subject to an accelerated judgment and sentence upon a violation of the terms and conditions of the order of deferred sentence. This is especially a problem where, as here, there is a lengthy deferred sentence. I believe a suspension from the practice of law for the duration of her deferred sentence is appropriate here. Upon successfully completing the terms of the deferred sentencing and when the criminal charges are dismissed, she could seek reinstatement of her license to practice law pursuant to Rule 11, RGDP. At the very least, I would suspend her for no less than two years and one day.

FOOTNOTES

[1] Rule 8.4, Cmt. 2, Oklahoma Rules of Professional Conduct, 5 O.S. 2011, Ch. 1, App. 3-A.

[2] Hastings threatened his ex-wife with a firearm and was involved in a police stand-off for several hours. State ex rel. Oklahoma Bar Ass'n v. Hastings, 2017 OK 43, ¶¶4-5, 395 P.3d 552. Eventually, he was removed from his home after the police used tear gas. Id., ¶5.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2020 OK 86, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LEVISAY
Discussed


 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 141, 766 P.2d 979, State ex rel. Oklahoma Bar Ass'n v. Stubblefield
Discussed
 1990 OK 9, 791 P.2d 815, State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed
 1993 OK 91, 863 P.2d 1136, 64 OBJ 2082, State ex rel. Oklahoma Bar Ass'n v. Johnston
Discussed
 1995 OK 17, 895 P.2d 701, 66 OBJ 782, State ex rel. Oklahoma Bar Assn. v. Adams
Discussed
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSON
Discussed
 2005 OK 91, 127 P.3d 600, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GARRETT
Discussed
 2006 OK 18, 136 P.3d 590, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BESLY
Discussed
 2006 OK 23, 136 P.3d 616, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PACENZA
Discussed
 2006 OK 50, 142 P.3d 420, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILBURN
Discussed
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed at Length
 2012 OK 71, 285 P.3d 1110, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. OLMSTEAD
Discussed at Length
 2012 OK 108, 291 P.3d 198, STATE ex rel OKLAHOMA BAR ASSOCIATION v. KERR
Discussed
 2013 OK 40, 303 P.3d 895, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BROWN
Discussed
 2013 OK 42, 304 P.3d 453, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed
 2014 OK 20, 323 P.3d 222, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDT
Discussed
 2014 OK 93, 338 P.3d 639, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. IJAMS
Discussed at Length
 2015 OK 50, 352 P.3d 1210, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS
Discussed at Length
 2017 OK 43, 395 P.3d 552, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HASTINGS
Discussed at Length
 2019 OK 55, 457 P.3d 1040, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOISANT
Discussed
 1980 OK 182, 620 P.2d 392, State ex rel. Oklahoma Bar Ass'n v. Peveto
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 589, False Reports of Crime - Penalty
Cited
 21 O.S. 1958, Using Access to Computers to Violate Oklahoma Statues - Penalty
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA