OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WAGNER

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WAGNER
2022 OK 13
Case Number: SCBD-7041
Decided: 02/01/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 13, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
BRECKEN A. WAGNER, Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

Â¶0 Respondent is an attorney licensed to practice law as a member of the Oklahoma Bar Association. A jury found respondent guilty of a misdemeanor, false reporting of a crime, and respondent was fined $500.00. The Judgment and Sentence of respondent's misdemeanor conviction was filed in this Court by the Oklahoma Bar Association for the purpose of this Court imposing summary discipline based upon respondent's conviction. We hold: (1) Two filings herein previously sealed by the Court shall remain sealed; and (2) Respondent's conviction does not demonstrate unfitness to practice law and the Oklahoma Bar Association's application for summary discipline is denied.

APPLICATION FOR FINAL SUMMARY DISCIPLINE DENIED

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Debbie Maddox, Oklahoma City, Oklahoma, for Respondent.

EDMONDSON, J.:

Â¶1 Respondent is an attorney licensed to practice law and a member of the Oklahoma Bar Association. This proceeding was commenced by the Oklahoma Bar Association pursuant to Rules Governing Disciplinary Proceedings (RGDP), Rule 7.1, due to respondent's conviction for the misdemeanor of false reporting a crime in violation of 21 O.S.2011, Â§ 589.[1] Rule 7.1 states a lawyer shall be subject to summary professional discipline when the lawyer is convicted of a crime "which demonstrates such lawyer's unfitness to practice law."[2] The Oklahoma Bar Association seeks public censure as summary professional discipline for respondent, although the Bar Association also states respondent's conviction does not demonstrate unfitness to practice law. We conclude respondent's conviction does not demonstrate unfitness to practice law and deny the Oklahoma Bar Association's application for summary discipline.

I. Respondent's Conduct and Conviction

Â¶2 The McAlester Fire Department arrived at a residence to extinguish a fire in its kitchen. An adult female left the residence after stating to a fireman she needed to pick up children at school. A fireman checked for additional fire or persons while moving through the residence and he observed "a possible handgun" on a bed near "drug paraphernalia." The fire department requested the presence of a police officer because of this observation. The fire department continued to work at the scene.

Â¶3 A responding police officer from the McAlester Police Department arrived and was told an adult female resident previously left the open premises. The police officer was led into the open residence and shown the location of the observed handgun and drug paraphernalia. The police officer exited the residence and telephoned an investigative officer so that the investigator could obtain a search warrant.

Â¶4 The woman who left the residence telephoned the owner of the residence, S.D., and the owner arrived at the residence accompanied by another individual, B.B., who was identified as a purchaser of the residence. The owner did not reside at the residence at that time. Firemen and police officers were at the residence when S.D. and B.B. arrived, and both individuals were denied access to inside the residence while the police and fire personnel were securing the residence and working the scene of a fire.

Â¶5 The respondent arrived at the residence and he had a discussion with S.D., B.B., and a police officer. The police officer informed respondent what had been observed in the residence and a police investigation had commenced. The officer directed respondent to leave the premises. Respondent stood on the street adjacent to the residence and telephoned his law partner. Respondent's law partner went to the Pittsburg County Courthouse and appeared before an Associate District Judge for the purpose of making objections to the application for a search warrant of the residence. The judge signed the search warrant after hearing an informal argument from respondent's law partner.

Â¶6 The respondent returned to the residence from the adjacent street, learned a search warrant had been obtained, and he asked a police officer for a copy of the search warrant for the non-resident owner of the residence. The police officer told respondent a search was commencing, declined to give respondent a copy of the search warrant at that time, and respondent was told he should leave the residence or be arrested.

Â¶7 Respondent returned to the adjacent street and telephoned the McAlester Police Department. He identified himself as the caller and the owner of the residence as the complaining party for the purpose of his telephone report. Respondent requested a trespass charge be lodged against the police officers executing a search at the residence because he requested a copy of the search warrant and was not provided a copy from the officers at the residence. Respondent then spoke briefly with an investigator at the residence, and respondent left the scene while the police officers continued their search.

Â¶8 The search occurred on September 16, 2020. A few weeks later on November 3, 2020, respondent was arrested by several McAlester police officers inside the Pittsburg County Courthouse as he left a courtroom after appearing for a client in a different matter. A jury trial of four days was held in the District Court of Pittsburg County on two misdemeanor counts against respondent, obstructing an officer (21 O.S. Â§ 540) and false reporting a crime (21 O.S. Â§ 589). The jury found respondent guilty of the misdemeanor of false reporting a crime. A five-hundred dollar fine and court costs were imposed. Respondent was acquitted on the charge of obstructing an officer. The judgment and sentence was entered in March 2021, respondent paid the fine, and he did not appeal the conviction.

II. Filings in Respondent's Disciplinary Proceeding

Â¶9 The Oklahoma Bar Association (the Bar) filed with the Chief Justice a notice and certified copies of respondent's criminal conviction and sentence. Rule 7 of the Rules Governing Disciplinary Proceedings provides a summary procedure for conducting disciplinary proceedings based upon a lawyer's criminal conviction.[3] A Rule 7 proceeding may commence with submission of certified copies of the conviction or deferred sentence to the Chief Justice of this Court.[4]

Â¶ 10 Rule 7 also provides the Court "may by order immediately suspend the lawyer from the practice of law until further order of the Court," or alternatively "may direct the lawyer to file a statement, to show cause, if any the lawyer has, why an order of immediate interim suspension from the practice of law should not be entered."[5] This Court's order directed respondent to show cause why an interim order of suspension should not be entered suspending respondent from the practice of law pending this Court's final determination of discipline.

Â¶11 Respondent filed a response with an appendix of documents. He simultaneously filed a motion requesting these documents be sealed. The Oklahoma Bar Association replied, noted some of the documents in respondent's appendix were privileged, and argued statements referencing these documents in respondent's response should be redacted.

Â¶12 Respondent's response and large appendix as well as the Bar's response (reply) were ordered to be provisionally sealed by this Court until further order by the Court. The respondent's response and appendix are currently filed under seal. Respondent's two sealed filings were reviewed by the Court for the purpose of this proceeding but confidential material therein protected from disclosure by a privilege was not considered. Additionally, non-privileged confidential material and non-confidential material were not considered to the extent their content was unnecessary for review of respondent's conviction for the purpose of a Rule 7 proceeding.[6] The Court's Order of June 22, 2021, states: "Consideration of the motion to seal is deferred to the decisional stage." Respondent's two provisionally sealed filings which were filed under seal shall remain sealed. The Bar's response (reply) was not filed under seal and the Bar did not reply to respondent's issues involving privileged or confidential material.[7] The Bar instead focused on the issue of respondent's conviction and the issues for a Rule 7 proceeding. The Bar's reply of June 30, 2021, shall not be sealed.

Â¶13 The Bar replied and argued that respondent "was not being dishonest or deceitful" but "it does appear that Respondent likely crossed the line of being a zealous advocate for his client and handled his interaction with police poorly." The Bar stated: "Although Respondent's behavior could have been better, it does not appear to have eroded the integrity and confidence that the public has in the legal profession." The Bar also stated respondent "has been cooperative during the investigation," "Complainant has not discovered any evidence which would facially demonstrate Respondent's unfitness to practice law," and "Complainant agrees with Respondent that an order of immediate interim suspension is not warranted."

Â¶14 The Court determined respondent met his first show-cause burden and the Court declined to enter an interim order of suspension. The Court next directed respondent to show cause why a final order of discipline should not be entered. The Court noted respondent may "submit a brief and/or any evidence tending to mitigate the severity of discipline." We also stated "the written return of the lawyer shall be verified and expressly state whether a hearing is desired," and we referenced RGDP, Rule 7.4.[8] Respondent filed both a response and a separate verified waiver of a mitigation hearing before the Professional Responsibility Tribunal.[9]

Â¶15 Respondent's response has an attached letter from respondent which indicates his participation in Lawyers Helping Lawyers and goals for his behavior. Respondent argues final professional discipline should not be entered against him by the Court.

Â¶16 The Bar replied and states "there has been no interruption of respondent's law license since he was admitted" to practice law in 2004. The Bar argues a final order of discipline should be entered and recommended a public censure as professional discipline.

Â¶17 After respondent filed his response to the show cause order concerning final discipline, an unsolicited pro se appearance in the disciplinary proceeding was made by the Sheriff of Haskell County, Oklahoma. The Court received two letters from the sheriff, the first dated September 20, 2021, and the second October 21, 2021. The first letter states it was filed to request respondent be held accountable for his actions. The second letter states "[t]his letter serves as a response to Mr. Wagner's letter to show cause as to why he should not be suspended."

Â¶18 The first letter states the sheriff possesses "my own theories as to why Mr. Wagner called the McAlester police dispatch to falsely report that the police officers were committing the crime of trespassing." The sheriff states respondent had animus directed towards law enforcement and various District Attorneys. He also states respondent's presence at the residence was for the purpose "to harass and annoy, and when he didn't get his way at the scene, he tied up more police resources by calling dispatch and falsely reporting that the officers were committing the crime of trespassing."

Â¶19 The sheriff also indicates his belief a double standard exists for attorneys versus police officers when members of both groups are being held professionally accountable for not speaking the truth. He argues criminal defense attorneys as a class have attacked police officers' truthfulness by showing in court the officers' inconsistent statements when the statements were merely inconsistent and not dishonest. He argues this type of attack when combined with application of a particular uniform criminal jury instruction eventually causes serious and negative professional results for the officer involved. He argues a double standard is created when a lawyer is found guilty of making a false police report and the lawyer does not receive serious and negative professional discipline for such report. He argues this result is a double standard because a "shockingly inconsistent" standard is being applied.

Â¶20 The sheriff states respondent was a defense attorney in a Pittsburg County criminal matter and respondent attacked the credibility of a police officer because of the officer's "prior bad acts." However, all of the legal proceedings against the officer were dismissed after property at issue was returned. The sheriff argues respondent "continues to enjoy that benefit of the doubt" concerning his veracity as an officer of the court, but this police officer "will never again enjoy that benefit of the doubt, despite all his [police officer's] cases [against the officer] being dismissed." The sheriff also argues this circumstance regarding how the police officer was treated by the District Court versus respondent's request herein for no discipline shows a "disingenuous and unjust" double standard applied to police officers versus attorneys. The sheriff's letter also states several additional sheriffs in Oklahoma support his request for a suspension to be imposed against respondent.

Â¶21 The Court allowed respondent an opportunity to file a reply to the sheriff's first letter. Prior to respondent filing his reply, the sheriff filed a second letter complaining of both former and present conduct by respondent. The sheriff again characterizes respondent's purpose at the residence as improper, and states respondent's report of a trespass at the residence was merely "another bullying tactic he [respondent] often employs."

Â¶22 The sheriff's second letter also states respondent "is still not being honest." The sheriff attaches photocopies of Facebook posts made by both respondent and the "Haskell County Sheriff's Office." The topics of the posts include an administrative personnel policy of the Haskell County Sheriff's Office concerning personnel vaccinations, the respondent's opinion of this administrative policy, the respondent's opinion of the sheriff, and the sheriff's opinion of respondent. The sheriff's letter states respondent was not "a person striving to change and build bridges," but respondent "has the audacity to comment, attack, and accuse three sheriffs in counties where he [respondent] practices regularly--Haskell, Latimer, and Pittsburg."

Â¶23 Respondent filed his response to the sheriff's first letter. The response references previous disagreements respondent had with the Sheriff of Haskell County. One of these involved a third police officer, allegations by respondent involving the truthfulness of this officer, and also whether this third officer had engaged in improper conduct with citizens. One of respondent's attachments to his response was an order by a judge of an Oklahoma District Court, and the order concluded "the evidence regarding his [the third police officer's] criminal history is admissible to impeach him." The disagreement between the sheriff and respondent attacking this third police officer's credibility was raised by the sheriff in his September 20th letter. Respondent also stated he had not met or interacted with several of the sheriffs who were listed in the September 20th letter as supporting the Haskell County Sheriff's request for respondent's professional suspension.

III. Rule 7 Professional Discipline

Â¶24 This proceeding is now before the Court for a determination whether final summary professional discipline should be imposed based upon respondent's conviction. Rule 7 may be used when a lawyer "has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law."[10] Respondent's awareness of jurisprudence concerning search warrants, trespass, and rights of property owners when he made his report to the police is not an issue for adjudication in this disciplinary proceeding.[11] Additionally, in this summary disciplinary proceeding we need not determine facts adjudicated as part of respondent's criminal conviction because "[t]he facts underlying the conviction are the facts in the disciplinary proceeding."[12]

Â¶25 The Bar's recommendation for professional discipline in a Rule 7 proceeding is not treated as binding or persuasive, and every aspect of the Rule 7 proceeding is reviewed de novo in the context of the Court's exercise of an original and exclusive jurisdiction in a lawyer disciplinary controversy.[13] A Rule 7 proceeding "requires our determination of two principal issues: (1) whether an attorney's conviction or deferred sentence demonstrates an unfitness to practice law; and, if it does, (2) the appropriate level of discipline based on all facts and circumstances."[14] A criminal conviction does not, by itself, always establish a lawyer's unfitness to practice law. For example, in a 1990 disciplinary proceeding we stated the following.

A lawyer's conviction of some crimes will, by itself, demonstrate such lawyer's unfitness to practice law. On the other hand, a lawyer's conviction for some kinds of illegal conduct will not facially demonstrate the lawyer's unfitness to practice law. This principle is recognized in a Comment to Rule 8.4 of the Rules of Professional Conduct.

State ex rel. Oklahoma Bar Association v. Armstrong, 1990 OK 9, 791 P.2d 815, 818 (citing 5 O.S.Supp.1988, Ch. 1, App. 3-A, Oklahoma Rules of Professional Conduct, Rule 8.4, Comment). The Comment we relied upon states as follows.

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. Comment, 5 O.S.Supp.1988, Ch. 1, App. 3--A, Rule 8.4.

The Comment is also found in a recent version of Rule 8.4 as Comment No. 2 codified at 5 O.S.2011, Ch. 1, App. 3--A, Rule 8.4. A single misdemeanor, or several misdemeanors, may show a lawyer's unfitness to practice law, such as a willful failure to file a tax return, conduct which is expressly mentioned in the Comment.[15] Unfitness to practice law is shown by a conviction for an offense that indicates "lack of those characteristics relevant to law practice," including offenses "involving violence, dishonesty or breach of trust, or serious interference with the administration of justice," or a "pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."

Â¶26 The sheriff's letters assert respondent's telephone call to the McAlester Police Department was dishonest and for the purpose of interfering with the search. The Bar Association states respondent was "not being dishonest or deceitful" in his telephone call to the McAlester Police Department. The Bar Association relies upon the content of the phone call. Respondent stated his name, his status representing the property owner, and a statement including (1) he was not provided a copy of the search warrant at the scene of the search, (2) for this reason a trespass was occurring, and (3) trespass charges should be made against the officers making the search.

Â¶27 Based upon the cognizable record before us in this proceeding, the issue is whether the single conviction of respondent demonstrates an unfitness to practice law. The sheriff discusses a pattern of alleged impermissible and unprofessional conduct by respondent after respondent's conviction by pointing to his Facebook criticism of the sheriff's administrative personnel policy concerning vaccinations. A pattern of repeated criminal offenses can indicate indifference to an attorney's legal obligation and warrant discipline.[16]

Â¶28 We have noted: "[t]here is practically universal agreement that a major purpose of the First Amendment is to protect the free discussion of governmental affairs.[17] We have recognized the law of Oklahoma has shown concern from the earliest times with the balance between a citizen's duties as an attorney and the attorney's right to speak freely on matters of public concern accorded to all people under our constitutional system of government.[18] A lawyer is subject to reasonable restraints on professional behavior exceeding those which exist with respect to the general public.[19] For example, Rule 8.2 of the Rules of Professional Conduct prohibits a lawyer making a statement the lawyer knows is false or with reckless disregard to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer.[20]

Â¶29 The sheriff's assertions are raised in letters after respondent's conviction and in the context of a Rule 7 summary proceeding. We need not determine whether a sheriff or a police officer is "public legal officer" for the purpose of Rule 8.2 or if the Rule applies herein. This is so due to a combination of two related reasons: (1) A due process issue is raised by a professional misconduct allegation made outside of both this specific Rule 7 conviction[21] or an additional Rule 6 process;[22] and (2) Our inability to determine the exact nature of the sheriff's complaint, (a) a sheriff, or this sheriff, should not be criticized by a lawyer, or (b) content of a sheriff's administrative personnel policy should not be criticized by a lawyer, or (c) a sheriff should not be criticized in this manner, i.e., publicly on Facebook, or (d) a different and unspecified standard for professional discipline should be created for lawyers concerning the veracity of their speech, or (e) whether respondent's criticisms of the sheriff contain false statements. These various interpretations of the sheriff's complaints require analysis of unadjudicated issues of fact as well as constitutional and nonconstitutional legal issues which are not briefed by the sheriff, the Bar, or respondent. We need not address them in a Rule 7 summary proceeding. However, the sheriff's letters merit an observation.

Â¶30 In the present instance, an assertion is made that a lawyer is publicly criticizing a sheriff's public personnel policy. The Preamble to the Rules of Professional Conduct states in part: "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."[23] We should not need to explain "public officials" in the context of the Preamble includes a sheriff for one of Oklahoma's counties. This Preamble also states the principles contained therein "include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system."[24] A professional, courteous and civil attitude towards all persons involved in the legal system includes a sheriff for one of Oklahoma's counties. A "free discussion of governmental affairs" and criticisms of a sheriff's public policies as they relate to the administration of justice do not require pejorative adjectives or insults.

Â¶31 In State ex rel. Oklahoma Bar Association v. Ezell, 2020 OK 55, 466 P.3d 551, the lawyer was guilty of two misdemeanor counts, (1) Falsely Reporting a Crime in violation of 21 O.S.2011, Â§ 589, and (2) Use of a Computer to Violate Oklahoma Statutes in violation of 21 O.S.2011, Â§ 1958. The lawyer's false report of a crime resulted in: (1) A local police department providing surveillance at the lawyer's workplace and home; (2) The police department escorted the lawyer from her place of employment and checked her vehicle for a GPS device; (3) Additional security was provided at her place of employment by a police department for a State entity; and (4) The Oklahoma State Bureau of Investigation (OSBI) placed pole cameras in the neighborhood of the lawyer's residence to monitor the lawyer's residence and nearby traffic. Id. 2020 OK 55, at Â¶6, 466 P.3d at 553. After an investigation was launched due to the false report, the lawyer continued to surreptitiously send threatening emails to herself, and the OSBI obtained information on certain groups of people and contacted law enforcement across the United States requesting information on similar threats. The district court ordered the lawyer to pay $21,810 in restitution for the costs involved in the OSBI investigation. The Court considered evidence offered for mitigation, and the lawyer was suspended for one year from the date of an interim suspension.

Â¶32 In Ezell, the Court determined whether the lawyer's convictions demonstrated an "unfitness to practice law." Id. 2020 OK 55, at Â¶17, 466 P.3d at 555-56. The Court addressed this determination by noting the lawyer (1) "was not forthcoming with the truth when confronted with the information obtained by OSBI regarding the source of the threatening emails," (2) attempted to cover up her involvement in this scheme of false reports and threatening emails, (3) obstructed the OSBI's investigation, (4) implicated another person as a potential suspect, and (5) engaged in conduct which resulted in the misuse and waste of State resources. Id.

Â¶33 Respondent's telephone call to the McAlester police officers included respondent's name, identification of his client, and a stated reason or purpose for the telephone call. The McAlester police officers were not impressed with respondent's stated reason for the telephone call, i.e., his assertion of a trespass. No trespass charge was made against a police officer. After respondent's telephone call to the McAlester Police Department, an investigator at the scene informed of the telephone call simply told respondent to go away or be arrested. Respondent's telephone call was unsuccessful for respondent's stated purpose and he left the scene.

Â¶34 Respondent was found guilty of making a false report of a crime by a jury where he practices law. The jury acquitted respondent on the obstruction charge. We agree with the Bar the facts related to respondent's conviction do not show deceit causing serious consequences for law enforcement as in Ezell. We conclude respondent's conviction does not demonstrate unfitness to practice law.

IV. Conclusion

Â¶35 Imposition of Rule 7 final summary discipline is based upon a conviction which demonstrates the lawyer's unfitness to practice law. In State ex rel. Oklahoma Bar Association v. Armstrong, 1992 OK 79, 848 P.2d 538, the Court determined the lawyer's conviction did not demonstrate unfitness to practice law, and we denied the applications for final discipline and costs. The Bar's filings herein do not seek costs. Two filings herein previously sealed by this Court shall remain sealed.

Â¶36 The application of the Oklahoma Bar Association for Rule 7 final summary discipline based upon respondent's conviction is denied.

Â¶37 Darby, C.J.; Kauger, Winchester, Edmondson, Gurich, and Rowe, JJ., concur.

Â¶38 Kane, V.C.J. (by separate writing); Combs, (by separate writing), and Kuehn, JJ., dissent.

Â¶39 Kane, V.C.J., with whom Combs and Kuehn, JJ., join, dissenting: "I would follow the Bar's recommendation and publicly censure for the conviction involving the false reporting of a crime."

Â¶40 Combs, J., dissenting: "I would not have considered the filings of the Sheriff in this disciplinary proceeding."

FOOTNOTES

[1] 21 O.S.2011, Â§ 589 (A) states: "A. It shall be unlawful to willfully, knowingly and without probable cause make a false report to any person of any crime or circumstances indicating the possibility of crime having been committed, including the unlawful taking of personal property, which report causes or encourages the exercise of police action or investigation. Any person convicted of violating the provisions of this subsection shall be guilty of a misdemeanor punishable by imprisonment in the county jail for not more than ninety (90) days or by a fine of not more than Five Hundred Dollars ($500.00), or by both such fine and imprisonment."

[2] 5 O.S.2011, Ch. 1, App. 1-A, Rule 7.1, quoted in part infra at Â¶ 24.

[3] State ex rel. Okla. Bar Ass'n v. Trenary, 2016 OK 8, Â¶ 11, 368 P.3d 801, 806 (citing State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96, Â¶ 7, 339 P.3d 895, 898).

[4] State ex rel. Okla. Bar Ass'n v. Dunivan, 2018 OK 101, Â¶15, 432 P.3d 1056, 1061 (citing RGDP Rule 7.2). RGDP, Rule 7.2, provides:

The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

[5] 5 O.S.Supp.2017, Ch. 1, App. 1-A, RGDP, Rule 7.3, Interim Suspension from Practice (amended by 2017 OK 104, eff. Dec. 18, 2017):

Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court may by order immediately suspend the lawyer from the practice of law until further order of the Court. In an order of suspension the Court may direct the lawyer to file a statement, to show cause, if any the lawyer has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession.

Alternatively, upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court may direct the lawyer to file a statement, to show cause, if any the lawyer has, why an order of immediate interim suspension from the practice of law should not be entered. Upon good cause shown, the Court may decline to enter an order of immediate interim suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession. If good cause is not shown, the Court may by order immediately suspend the lawyer from the practice of law until further order of the Court.

[6] Some of the sealed material submitted by respondent raises issues relating to (1) the nature of confidentiality required for professional grievances against other lawyers when a respondent seeks to use them as a defense or mitigation in respondent's own disciplinary proceeding, (2) the nature of an evidentiary privilege in a disciplinary proceeding when this Court is exercising original disciplinary jurisdiction, and (3) when a privilege is not coextensive with an ethical duty of confidentiality. The issues are not briefed by respondent, and we need not analyze them to adjudicate the legal effect of his conviction in this Rule 7 proceeding.

[7] The Court's Order, June 22, 2021, stated "Complainant may respond to Respondent Wagner's Response to Order to Show Cause, no later than July 1, 2021. Respondent Wagner's Response to Order to Show Cause and Appendix and Complainant's response will be provisionally sealed until further order by this Court." Complainant's response was filed on June 30, 2021, not under seal, and was titled as a "reply" to respondent's response.

[8] Order of the Court, September 13, 2021, and quoting Rule 7.4, RGDP, which states in part: "The written return of the lawyer shall be verified and expressly state whether a hearing is desired. The lawyer may in the interest of explaining his conduct or by way of mitigating the discipline to be imposed upon him, submit a brief and/or any evidence tending to mitigate the severity of discipline."

[9] A lawyer may in the interest of explaining his or her conduct or by way of mitigating the discipline to be imposed submit evidence tending to mitigate the severity of discipline, but a post-conviction disciplinary hearing will not relitigate the facts which gave rise to the criminal charges. State ex rel. Okla. Bar Ass'n v. Demopolos, 2015 OK 50, n. 15, 352 P.3d 1210, 1214 (citing State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 1, 60 P.3d 1024, 1026).

[10] 5 O.S. 2011, Ch. 1, app. 1--A, RGDP, 7.1.

[11] See generally, U.S. v. Grubbs, 547 U.S. 90, 98-99, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (in response to a claim "that the executing officer must present the property owner with a copy of the warrant before conducting his search," the Court stated "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement"); Darity v. State, 2009 OK CR 27, Â¶Â¶ 6-9, 220 P.3d 731, 733-734 ("personal service of a search warrant has never been a condition precedent to a reasonable search under the Oklahoma Constitution or any act of the Oklahoma Legislature") (discussing Pennington v. State, 1956 OK CR 98, 302 P.2d 170).

[12] State ex rel. Okla. Bar Ass'n v. Zannotti, 2014 OK 25, Â¶ 17, 330 P.3d 11, 15 (citing Rule 7.2, RGDP); see also State ex rel. Okla. Bar Ass'n v. Drummond, 2017 OK 24, Â¶18, 393 P.3d 207, 214 ("A deferred sentence is deemed conclusive evidence of an attorney's commission of criminal act(s) in a disciplinary case initiated under RGDP Rule 7."); State of Okla. ex rel. Okla. Bar Ass'n v. Kerr, 2012 OK 108, Â¶3, 291 P.3d 198, 199 ("Pursuant to Rule 7.2, RGDP, the information, judgment and sentence are conclusive evidence of the conviction of the crime upon which the proceeding is based and warrant the imposition of professional discipline.").

[13] State ex rel. Okla. Bar Ass'n v. Friesen, 2015 OK 34, Â¶18, 350 P.3d 1269, 1273 ("Each aspect of a Rule 7, RGDP proceeding is reviewed de novo."); State ex rel. Okla. Bar Ass'n v. Livshee, 1994 OK 12, 870 P.2d 770, 773 (Every aspect of the disciplinary inquiry is within the Court's de novo exclusive, original and nondelegable cognizance in a Rule 7 proceeding.) see also State of Okla. ex rel. Okla. Bar Ass'n v. Elsey, 2019 OK 81, 455 P.3d 903, 905-06 (Court stated in a Rule 7 proceeding, the trial panel's recommendations concerning professional discipline were "neither binding nor persuasive;" and Court exercises an original and exclusive de novo review of evidence when assessing a lawyer's fitness to practice law, and the interests of the public, courts, and legal profession.).

[14] State ex rel. Okla. Bar Ass'n v. Dunivan, 2018 OK 101, Â¶ 16, 432 P.3d 1056, 1061 (citing State ex rel. Okla. Bar Ass'n v. Cooley, 2013 OK 42, Â¶ 2, 304 P.3d 453, 454).

[15] State ex rel. Oklahoma Bar Ass'n v. Livshee, 1994 OK 12, 870 P.2d 770 (lawyer's misdemeanor conviction for willful failure to file an income tax return demonstrated the lawyer's unfitness to practice law within the meaning of Rule 7.1); State ex rel. Okla. Bar Ass'n v. Gann, 1995 OK 48, 895 P.2d 726 (public censure in Rule 6 proceeding based upon four misdemeanor counts for failure to file a income tax return and respondent's conduct initiating payment of all tax liability); State ex rel. Okla. Bar Ass'n v. Coleman, 2021 OK 63, 500 P.3d 625 (failure to file a tax return and public reprimand in a Rule 7 proceeding).

[16] See, e.g., State of Okla. ex rel. Okla. Bar Ass'n v. Elsey, 2019 OK 81, Â¶21, 455 P.3d 903, 907 (lawyer's alcohol-related driving offenses provided clear and convincing evidence of indifference to legal obligations and lawyer's conduct reflected adversely on the legal profession).

[17] State ex rel. Okla. Bar Ass'n v. Porter, 1988 OK 114, 766 P.2d 958, 966 (citing First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)).

[18] Id. 1988 OK 114, 766 P.2d at 963.

[19] Id. 1988 OK 114, 766 P.2d at 962.

[20] 5 O.S.2011 Ch. 1, App. 3-A, Rules of Professional Conduct, Rule 8.2(a) states: "(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

[21] Generally, facts relating to an allegation of professional misconduct in support of summary discipline are based upon the facts adjudicated as part of the conviction, and trial panel mitigation hearing if one is held. State ex rel. Okla. Bar Ass'n v. Demopolos, supra at n.7. An allegation of professional misconduct used in support of a lawyer's suspension is subject to due process. Demopolos, 2015 OK 50, Â¶ 34, 352 P.3d at 1220; State ex rel. Okla. Bar Ass'n v. Gaines, 2016 OK 80, Â¶8, 378 P.3d 1212, 1217 ("A lawyer accused of misconduct must be afforded due process, and given notice of the charges and a reasonable opportunity to be heard."). An allegation of professional misconduct in a Rule 7 proceeding which is additional or outside the Rule 7 conviction adjudication and mitigation hearing adjudicatory procedure must be part of some other procedure providing due process, such as Rule 6 procedure, when the allegation of misconduct is used for the purpose of seeking to impose professional discipline. Id.

[22] State ex rel. Okla. Bar Ass'n v. Claborn, 2019 OK 14, Â¶17, 440 P.3d 660, 665 ("Due process requires the Bar to allege facts sufficient to put an attorney on notice of the claims asserted against the attorney."); State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, Â¶8, 23 P.3d 268, 273 ("A lawyer in a disciplinary proceeding receives the protection of the Due Process Clause, and must be given notice of the allegations of misconduct, or the claims of the 'opposing party.'"); State ex rel. Okla. Bar Ass'n v. Stow, 1998 OK 105, Â¶ 21, 975 P.2d 869, 875 ("The Bar Association must allege facts sufficient to put the accused lawyer on notice of the charges and afford the respondent ample opportunity to defend against the allegations.").

[23] 5 O.S.2011, Ch. 1,. App. 3-A, Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities, at [5].

[24] Id. Preamble: A Lawyer's Responsibilities, at [9].

Â